# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| BRAYLON HAYNES, Individually & on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| V. | § § | Case No. 2:08-CV-183 |
| (1) WELLS FARGO BANK, N.A., & (2) WELLS FARGO HOME MORTGAGE, | § § § | |
| Defendants. | § § | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND BRIEF IN SUPPORT OF CLASS CERTIFICATION

Respectfully submitted,

Robert T. Mowrey
 Lead Attorney
  State Bar No. 14607500
Thomas A. Connop
  State Bar No. 04702500
Thomas G. Yoxall
  State Bar No. 00785304
Elizabeth K. Duffy
  State Bar No. 24050535
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000
(214) 740-8800 Facsimile

**ATTORNEYS FOR DEFENDANT**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENTS AND AUTHORITIES ............................................................... 2

     A.     Legal Standards for Class Certification ................................................ 2

     B.     Plaintiff's Class is Not Sufficiently Ascertainable ............................... 5

     C.     Plaintiff Cannot Satisfy the Requirements of Rule 23(a).................... 8

         1.     Plaintiff has not demonstrated numerosity. ........................... 9

         2.     Plaintiff cannot demonstrate commonality. ......................... 10

             a.     *Courts are split regarding whether Rule 2016 applies to mortgage fees and costs.* ........................................ 11

             b.     *A split in the courts precludes any commonality with respect to when Rule 2016(a) would apply.* .................................. 16

             c.     *Every "consent order" and claim in each bankruptcy case must be examined.* ......................................... 22

             d.     *There is no private right of action for a violation of Bankruptcy Rule of Procedure 2016(a).* ........................... 23

         3.     Plaintiff cannot demonstrate typicality. ................................. 24

     D.     Plaintiff Cannot Satisfy the Requirements of Rule 23(b)(2) .............. 25

     E.     Plaintiff Cannot Meet the Prerequisites For an FDCPA Sub-Class..................... 28

     F.     This Case is Not Identical to *In Re Rodgriguez* And The Relief Sought Here Has Not Been "Pre-Approved" By the Fifth Circuit ................... 32

III.   CONCLUSION ................................................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aimese v. Kolenda (In re Kolenda),*
    212 B.R. 851 (W.D. Mich. 1997) ...................................................................17

*Alderwoods Group, Inc. v. Garcia,*
    682 F.3d 958 (11th Cir. 2012) .....................................................................27

*Allison v. Citgo Petroleum Corp.,*
    151 F.3d 402 (5th Cir. 1998) .................................................................25, 31

*Ameriquest Mortgage Co. v. Nosek (In re Nosek),*
    544 F.3d 34 (1st Cir. 2008) .........................................................................24

*Ayers v. Aurora Loan Servs., LLC,*
    787 F. Supp. 2d 451 (E.D. Tex. 2011) .......................................................29

*Bacon v. Sw. Airlines Co.,*
    No. Civ. A. 3:97–CV–2211–L, 1999 WL 134569 (N.D. Tex. Mar. 5, 1999) ........................29

*Barbosa v. Solomon,*
    235 F.3d 31 (1st Cir. 2000) .........................................................................17

*Barnett v. Experian Info. Solutions,*
    No. CIV.A. 2:00CV175, 2004 WL 4032909 (E.D. Tex. Sept. 30, 2004) ...........................32

*Beck v. Gold Key Lease, Inc. (In re Beck),*
    283 B.R 163 (E.D. Pa. 2002) ......................................................................27

*Black v. United States Postal Service California Franchise Tax Board v. Jones (In re Jones),*
    420 B.R. 506 (9th Cir. B.A.P. 2009) ...........................................................18

*Black v. United States Postal Svc. (In re Heath),*
    115 F.3d 521 (7th Cir. 1997) ......................................................................17

*Bolin v. Sears, Roebuck & Co.,*
    231 F.3d 970 (5th Cir. 2000) ...........................................................2, 3, 4, 32

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ..............................................................................27, 28

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n,*
    624 F.3d 185 (5th Cir. 2010) ...........................................................15, 26, 27

*Chan v. Korean Air Lines, Ltd.*,
    109 S.Ct. 1676 (1989) ................................................................................. 15

*Conrad v. Gen. Motors Acceptance Corp.*,
    283 F.R.D. 326 (N.D. Tex. 2012) ............................................................ 9, 10

*Cox v. Zale Delaware, Inc.*,
    239 F.3d 910 (7th Cir. 2001) ......................................................................27

*Fleming v. Travenol Labs., Inc.*,
    707 F.2d 829 (5th Cir. 1983) .................................................................. 9, 10

*FPX, LLC v. Google, Inc.*,
    276 F.R.D. 543 (E.D. Tex. 2011).................................................... 3, 4, 25, 28

*Gin v. CitiMortgage, Inc. (In re Ginn)*,
    465 B.R. 84 (Bankr. D.S.C. 2012) ..............................................................24

*Guetling v. Household Fin. Servs., Inc.*,
    312 B.R. 699 (M.D. Fla. 2004) ...................................................................27

*In re Aldrich*,
    No. BKR 08-00520, 2008 WL 4185989 (N.D. Iowa Sept. 4, 2008)................. 14, 24

*In re Atwood*,
    293 B.R. 227 (BAP 9th Cir. 2003) ..............................................................14

*In re Booth*,
    399 B.R. 316 (Bankr. E.D. Ark. 2009).........................................................13

*In re Deepwater Horizon (Deepwater Horizon II )*,
    739 F.3d 790 (5th Cir. 2014) .....................................................................10

*In re Hale*,
    No. 14-04337, 2015 WL 1263255 (Bankr. D.S.C. Mar. 16, 2015) ....................13

*In re Hudak*,
    No. 08-10478-SBB, 2008 WL 4850196 (Bankr. D. Colo. Oct. 24, 2008)............13

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    829 F.2d 1171 (D.C. Cir. 1987) .................................................................15

*In re Madison*,
    337 B.R. 99 (Bankr. N.D. Miss. 2006)..........................................................14

*In re Monroy*,
    650 F.3d 1300 (9th Cir. 2011) ...................................................................14

*In re Price*,
    403 B.R. 775 (Bankr. E.D. Ark. 2009) ................................................................. 13

*In re Quist*,
    No. 94-03192, 2002 WL 33939726 (Bankr. D. Idaho May 23, 2002) ...................................... 8

*In re Ramsey*,
    421 B.R. 431 (Bankr. M.D. Tenn. 2009) ................................................................. 14

*In re Soto*,
    No. 12-12373, 2013 WL 323319 (Bankr. N.D. Cal. Jan. 26, 2013) ...................................... 14

*In re Thomas*,
    291 B.R. 189 (Bankr. M.D. Ala. 2003) ................................................................. 8

*In re Thongta*,
    480 B.R. 317 (Bankr. E.D. Wis. 2012) ................................................................. 13

*In re Winston*,
    416 B.R. 32 (Bankr. N.D.N.Y. 2009) ................................................................. 13

*In re: Rodriguez*,
    No. 09-20863-CIV, 2015 WL 9697324 (S.D. Fla. Dec. 9, 2015) .................................. 17, 33

*Industrial Clearinghouse, Inc. v. Mims (In re Coastal Plains, Inc.)*,
    338 B.R. 703 (N.D. Tex. 2006) ................................................................. 8

*John v. National Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) ................................................................. 2

*Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert)*,
    411 F.3d 452 (3d Cir. 2005) ................................................................. 24

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) ................................................................. 4, 11, 28

*Maldonado v. Ochsner Clinic Found.*,
    493 F.3d 521 (5th Cir. 2007) ................................................................. 26

*Mann v. Chase Manhattan Mortgage Corp.*,
    316 F.3d 1 (1st Cir. 2003) ................................................................. 22

*Mason v. Integrity Ins. Co. (In re Mason)*,
    709 F.2d 1313 (9th Cir. 1983) ................................................................. 8

*Matter of Adams*,
    734 F.2d 1094 (5th Cir. 1984) ................................................................. 23

*Mattox v. Wells Fargo, N.A. (In re Mattox)*,
Adv. No. 10-5041, 2011 WL 3626762 (Bankr. E.D. Ky. Aug. 17, 2011) ...................... 12, 24

*Mims v. Stewart Title Guar. Co.*,
590 F.3d 298 (5th Cir. 2009) ........................................................................................... 31

*Morrow v. Washington*,
277 F.R.D. 172 (E.D. Tex. 2011) ............................................................................ 3, 8, 30

*Oshana v. Coca-Cola Bottling Co.*,
225 F.R.D. 575 (N.D. Ill. 2005) ........................................................................................ 8

*Padilla v. GMAC (In re Padilla)*,
389 B.R. 409 (Bankr. E.D. Pa. 2008) ............................................................................... 13

*Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*,
379 B.R. 643 (Bankr. S.D. Tex. 2007) ................................................................... 12, 20, 22

*Perez v. Metabolife Int'l, Inc.*,
218 F.R.D. 262 (S.D. Fla. 2003) ...................................................................................... 26

*Perry v. Stewart Title Co.*,
756 F.2d 1197 (5th Cir. 1985) .................................................................................... 29, 30

*Pertuso v. Ford Motor Credit Co.*,
223 F.3d 417 (6th Cir. 2000) ........................................................................................... 24

*Pompa v. Wells Fargo Home Mortgage, Inc. (In re Pompa)*,
No. 06-31759, 2012 WL 2571156 (Bankr. S.D. Tex. June 29, 2012) ................................... 24

*Port Drum Co. v. Umphrey*,
852 F.2d 148 (5th Cir. 1988) ...................................................................................... 23, 24

*Reyes v. Julia Place Condos. Homeowners Ass'n, Inc.*,
No. 12-2043, 2014 WL 7330602 (E.D. La. Dec. 18, 2014) ................................................ 31

*Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*,
421 B.R. 356 (Bankr. S.D. Tex. 2009) ............................................................................. 21

*Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*,
695 F.3d 360 (5th Cir. 2012) ........................................................................................... 33

*Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*,
372 B.R. 289 (Bankr. S.D. Tex. 2007) ....................................................................... 12, 20

*Security Bank of Marshalltown, Iowa v. Neiman*,
1 F.3d 687 (8th Cir. 1993) ............................................................................................... 17

*In re Sheppard*,
    No. 10–33959–KRH, 2012 WL 1344112 (Bankr. E.D. Va. Apr. 18, 2012) ........................ 13

*Sibley v. Diversified Collection Servs., Inc.*,
    No. Civ. A. 396-CV-0816-, 1998 WL 355592 (N.D. Tex. June 30, 1998) .......................... 31

*Sibley v. Fulton DeKalb Collection Serv.*,
    677 F.2d 830 (11th Cir. 1982) ........................................................................................ 32

*Singleton v. Wells Fargo Bank, N.A. (In re Singleton)*,
    284 B.R. 322 (D. R.I. 2002) ........................................................................................... 27

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) .......................................................................................... 25

*Suntex Dairy v. Bergland*,
    591 F.2d 1063 (5th Cir. 1979) ........................................................................................ 27

*Telfair v. First Union Mortgage Corp.*,
    216 F.3d 1333 (11th Cir. 2000) ...................................................................................... 17

*U.S. v. AMC Entertainment, Inc.*,
    549 F.3d 760 (9th Cir. 2008) .................................................................................... 15, 28

*Unger v. Amedisys Inc.*,
    401 F.3d 316 (5th Cir. 2005) ............................................................................................ 3

*United Student Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010) ................................................................................................... 8, 15

*Vick v. NCO Fin. Sys., Inc.*,
    No. 2:09-CV-114-TJW-CE, 2011 WL 1193027 (E.D. Tex. Mar. 7, 2011) .................... 28, 29

*Waffenschmidt v. MacKay*,
    763 F.2d 711 (5th Cir. 1985) .................................................................................... 26, 27

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541 (2011) ..................................................................... passim

*Waldron v. Brown (In re Waldron)*,
    536 F.3d 1239 (11th Cir. 2008) ...................................................................................... 17

*Weiss v. Regal Collections*,
    385 F.3d 337 (3rd Cir. 2004) .......................................................................................... 32

*Wilborn v. Wells Fargo Bank, N.A.*,
    609 F.3d 748 (5th Cir. 2010) .................................................................................. passim

*Williams v. Countrywide Home Loans, Inc.*,
    504 F. Supp. 2d 176 (S.D. Tex. 2007), aff'd, 269 Fed. Appx. 523 (5th Cir. 2008) ...............29

*Williams v. Sears, Roebuck and Co. (In re Williams)*,
    244 B.R. 858 (S.D. Ga. 2000) ...........................................................................................27

*Woodard v. Taco Bueno Restaurants, Inc.*,
    No. CIV.A. 4:05-CV-804-Y, 2006 WL 3542693 (N.D. Tex. Dec. 8, 2006)..........................17

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. 1981) .............................................................................................9

## FEDERAL STATUTES

11 U.S.C. § 105(a) of the Code.......................................................................... 2, 24, 26, 27

11 U.S.C. § 362(a) ............................................................................................ 1, 19, 20, 21

11 U.S.C. § 362(d) .........................................................................................................22

11 U.S.C. § 362(k) .....................................................................................................22, 21

11 U.S.C. § 502(a) .........................................................................................................22

11 U.S.C. § 506.........................................................................................................13, 22

11 U.S.C. § 522(b) .........................................................................................................21

11 U.S.C. § 541(a)(1)-(7) ................................................................................................16

11 U.S.C. § 1306(a)(2) ...............................................................................................16, 17

11 U.S.C. § 1322(b)(9)....................................................................................................21

11 U.S.C. § 1327(b) ............................................................................................ 16, 17, 18, 21

15 U.S.C. § 1692a(6).......................................................................................................29

15 U.S.C. § 1692a(6)(F)..............................................................................................29, 30

28 U.S.C. § 1407 ............................................................................................................15

28 U.S.C. § 2072.............................................................................................................23

## FEDERAL RULES

FED. R. BANKR. P. 2016(a) ........1, 5, 6, 7, 10, 11, 13, 14, 15, 16, 18, 19, 23, 24, 25, 26, 28, 33, 34

FED. R. BANKR. P. 3002.1..........................................................................................12, 13, 14

F<small>ED</small>. R. C<small>IV</small>. P. 23(a) ........................................................................................3, 4, 9, 10, 11, 30

F<small>ED</small>. R. C<small>IV</small>. P. 11 ....................................................................................................................24

F<small>ED</small>. R. C<small>IV</small>. P. 23(b) ........................................................................................3, 4, 25, 31, 32

**O<small>THER</small> A<small>UTHORITIES</small>**

Eugene R. Wedoff, *Proposed New Bankruptcy Rules on Creditor Disclosure and
    Creditor Enforcement of the Disclosures—Open for Comment*, 83 Am. Bankr. L.J.
    579, 582 (2009) ...........................................................................................................13

Bankr. D. Ore. Gen. Order 97-1 ................................................................................................14

Bankr. D. Vt. Standing Order 10-02 ..........................................................................................14

Bankr. S.D. Ill. Gen. Order 07-05..............................................................................................14

Wells Fargo Bank, N.A. ("Wells Fargo")[1] files this Response in Opposition to Plaintiff's Motion for Class Certification (Doc. 103) (the "Motion") and Brief in Support of Class Certification (Doc. 192) ("Plaintiff's Brief"):

## I.     INTRODUCTION

Plaintiff Braylon Haynes ("Plaintiff") seeks to certify a national class of individuals who were debtors in chapter 13 bankruptcy cases throughout the United States and who received discharges prior to December 1, 2011. These individuals had mortgage loans serviced by Wells Fargo, and were assessed a fee or cost "governed" by Federal Rule of Bankruptcy Procedure 2016(a) ("Rule 2016(a)") during their bankruptcy cases.

Plaintiff contends that Rule 2016(a) required Wells Fargo to file an application with the bankruptcy courts for approval before assessing the fees and costs. Plaintiff claims Wells Fargo failed to seek such approval as to each member of the putative class. Plaintiff further claims this failure violated the Fair Debt Collection Practices Act (the "FDCPA"), Rule 2016(a), the putative class members' chapter 13 plans and the orders confirming the plans, as well as the automatic stay of 11 U.S.C. §362(a) and the discharge injunctions entered in the putative class members' bankruptcy cases. (*See* Plaintiff's First Amended Original Complaint (Doc. 61) (the "FAC").) He also claims this conduct constitutes contempt of court. (*See id.*)

As a remedy for this alleged conduct, Plaintiff seeks: (1) a declaratory judgment that Wells Fargo's alleged conduct violated eight Bankruptcy Code[2] provisions, Bankruptcy Rule 2016(a), the FDCPA, and constitutes an abuse of process; (2) an injunction (a) enjoining Wells Fargo from "engaging in debt collection practices and foreclosures that are in violation of the [FDCPA] and the United States Bankruptcy Code," (b) prohibiting Wells Fargo from collecting

---

[1]     The term "Wells Fargo" includes its division, Wells Fargo Home Mortgage.

[2]     11 U.S.C. § 101, *et seq.* (hereinafter referred to as the "Code").

fees and costs that are not approved by the class members' bankruptcy court, and (c) requiring Wells Fargo to reapply any fee or charge "collected improperly from a class member's chapter 13 trustee or from the class member to principal, interest or escrow"; (3) statutory damages and attorneys' fees for violations of the FDCPA; (4) attorneys' fees and costs and/or sanctions for Wells Fargo's violations of the Code and Rules; and (5) an order finding Wells Fargo in contempt under section 105 of the Code and awarding "appropriate relief." (FAC at pp. 27-28.)[3]

Plaintiff devotes his Brief largely to the alleged merits of his claims. But the parties are before the Court on Plaintiff's Motion for Class Certification, not the merits, and that Motion must be denied. Plaintiff cannot carry his burden of demonstrating any one of his claims is capable of determination on a class-wide basis. His class definition is fatally imprecise and overbroad. The proceedings in this case cannot generate a common answer to resolve each of the putative class member's claims. Contrary to Plaintiff's contentions, there is no common injurious conduct or common injury across the national class he seeks to certify. Critically, even if there existed common conduct, it cannot be redressed by an injunction with a national reach.

## II.     ARGUMENTS AND AUTHORITIES

## A.     LEGAL STANDARDS FOR CLASS CERTIFICATION

Class certification is determined on a claim-by-claim basis. *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000) (citing FED. R. CIV. P. 23(c)(4)). Each claim must meet several prerequisites to certification. The first prerequisite is implied, yet essential—the class of persons to be represented by the proposed class representative must be ascertainable. *John v.*

---

[3]     Plaintiff may have abandoned several of these specific requests for relief. Plaintiff's Motion and Brief only implore this Court to rely on section 105(a) of the Code and its contempt power to issue the nationwide class permanent injunctive relief. Specifically, he appears to only seek an injunction prohibiting Wells Fargo from collecting the unapproved fees and costs going-forward and requiring Wells Fargo to credit any payments former debtors have already made towards such fees and costs back to the former debtors' loan accounts. Additionally, Plaintiff still seeks to certify a sub-class of former debtors for purposes of recovering statutory damages allegedly available to Plaintiff and the putative class under the FDCPA.

*National Sec. Fire & Cas. Co.,* 501 F.3d 443, 445, n. 3 (5th Cir. 2007) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable") (quoting *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970)). "The proposed class must be clearly defined so that it is administratively feasible for the Court to determine whether a particular individual is a member." *Morrow v. Washington*, 277 F.R.D. 172, 187 (E.D. Tex. 2011) (citing *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001) (internal citations omitted)). "The Court must be able to make this determination based on objective criteria and without having to answer numerous fact-intensive questions." *Id.* (citing *Daniels*, 198 F.R.D. at 414, *Williams v. Glickman,* No. Civ.A. 95–1149, 1997 WL 33772612, at *4, (D. D.C. 1997) and *Crosby v. Social Sec. Admin.,* 796 F.2d 576, 580 (1st Cir. 1986)).

The plaintiff must next show that the proposed class meets all of the requirements of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)") and fits within one of the categories of Federal Rule of Civil Procedure Rule 23(b) ("Rule 23(b)"). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2548 (2011); *Bolin*, 231 F.3d at 975. It is the plaintiff's burden to demonstrate his claim is appropriate for class treatment. *Wal-Mart*, 131 S. Ct. at 2548; *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005); *FPX, LLC v. Google, Inc.*, 276 F.R.D. 543, 548 (E.D. Tex. 2011). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *FPX,* 276 F.R.D. at 548 (quoting *Wal-Mart*, 131 S.Ct. at 2551) (emphasis original).

Rule 23(a) requires: (1) numerosity—the class must be so numerous that joinder of all members is impracticable; (2) commonality—there must exist questions of law or fact common

to the class; (3) typicality—the claims or defenses of the representative party must be typical of the claims or defenses of the class; and (4) adequacy—the representative party must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a); *Wal–Mart*, 131 S.Ct. at 2548.[4]

Plaintiff seeks certification under Rule 23(b)(2), which only applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2); *Bolin*, 231 F.3d at 975. The pattern of behavior cannot involve "diverse acts in various circumstances." *Bolin*, 231 F.3d at 975. "Certification is improper if the merits of the claim turns on defendant's individual dealings with each plaintiff." *Id.* The injunctive relief sought must be "appropriate respecting the class *as a whole*." FED. R. CIV. P. 23(b)(2) (emphasis added).

The court is charged with conducting a "rigorous analysis" to determine whether the plaintiff has met the Rule 23(a) and (b) requirements. *FPX*, 276 F.R.D. at 548 (citing *Castano v. The Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). Courts must "look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (internal citations and quotations omitted). "[T]he rigorous analysis required of the court may entail some overlap with the merits of the plaintiff's underlying claim." *FPX*, 276 F.R.D. at 548 (quoting *Wal-Mart*, 131 S.Ct. at 2551) (internal quotations omitted). In this manner, the class certification determination rests within the sound discretion of the trial court, exercised within the constraints of Rule 23. *Id.* (citation omitted). Plaintiff's purported class cannot withstand this rigorous analysis.

---

[4]     Plaintiff has also requested appointment of Kellett & Bartholow PLLC and James Holmes, Esq. as class counsel. The standards for appointment of class counsel are set forth in Rule 23(b) and are not in dispute. Wells Fargo reserves the right to examine the factual support for the request at the hearing on the Motion.

## B.    PLAINTIFF'S CLASS IS NOT SUFFICIENTLY ASCERTAINABLE

Plaintiff defines his class as a national class of individuals:

a.    who owed funds on a Wells Fargo serviced note;

b.    who have not fully paid the relevant mortgage note, fees or costs owed to Wells Fargo or their successors and assigns;

c.    who filed a chapter 13 proceeding pursuant to the United States Bankruptcy Code and who have confirmed Chapter 13 plans that treated mortgages serviced by Wells Fargo;

d.    who received a Chapter 13 discharge prior to December 1, 2011; and,

e.    as to whom Wells Fargo has assessed a fee or cost governed by Fed. R. Bankr. P. 2016(a), attributable to a time after the filing of a bankruptcy petition and before the date on which the individual received a Chapter 13 discharge, unless such fee or cost was approved in a bankruptcy court order.

(Motion at ¶ 1.)  This definition fails to articulate a clearly ascertainable class.

First, the definition is ambiguous, lacking crucial information with respect to numerous key matters.  Plaintiff does not state when the class period begins.  Plaintiff's class includes individuals who "owed" funds on a "Wells Fargo serviced note" but "who have not fully paid the relevant mortgage note, fees or costs owed to Wells Fargo or their successors and assigns."  Paragraph (a) uses the past tense to include only those who "*owed*" funds on a "Wells Fargo serviced note", while paragraph (b) limits membership to those who "have not fully paid" their notes or fees and costs.  Does the class include former debtors whose loans have been released to other servicers?  Does it include former debtors whose loans have been foreclosed or who have taken advantage of short-sales, modifications, settlements or other agreements?

Plaintiff also confuses the role of servicer and owner of a loan, indicating that the class members must not have fully paid the mortgage note, fees or costs "owed to Wells Fargo or their successors and assigns."  Is Wells Fargo's ownership of a putative class member's note a criteria

for class membership?  In paragraph (c), Plaintiff limits membership to those debtors with "confirmed Chapter 13 plans that *treated* mortgages serviced by Wells Fargo." (*Id.* (emphasis added).)  The term "treated" is not defined anywhere in the Bankruptcy Code and is not employed in Chapter 13.  Does Plaintiff intend that only former debtors whose mortgage debt was paid though a Chapter 13 trustee are included in the class, or are former debtors who paid their mortgage debt outside of their plans included?  Subsection (e) excludes from class membership debtors whose fees or costs were approved by *any* court order.  This section raises important questions as to whether Plaintiff is actually seeking to enforce Rule 2016(a) as he claims.  He does not require that the fee or cost be approved pursuant to his interpretation of Rule 2016(a); this section reveals Plaintiff's implicit acknowledgment that fees and costs have been and were treated in different ways by courts across the country.  (*See id.*; Plaintiff's Brief at p. 3 ("fees that were disclosed or approved by the bankruptcy court through a manner other than Fed. R. Bankr. P. 2016 are not at issue in this case.").)  This carve out proposed by Plaintiff himself is only one of the many individual questions that govern class membership rendering the class unmanageable.  Plaintiff's class definition is inherently inconsistent with his alleged goal of enforcing Rule 2016(a) and undermines his ultimate theory of liability in this case.  These ambiguities and contradictions preclude identification of a manageable class.

Second, Plaintiff's class definition is defective because in order to ascertain who is a member the Court must engage in layers of legal analysis to resolve issues that have been applied in numerous ways across the country.  Before a class member can be identified, the Court must answer the question of what constitutes a "fee or cost governed by Bankruptcy Rule 2016(a)." (Motion at p. 2 (putative class members are former debtors who were assessed a "fee or cost governed by Fed. R. Bankr. P. 2016(a)").)  Rule 2016(a) states in relevant part:

> (a) Application for compensation or reimbursement
>
> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested… .

FED. R. BANKR. P. 2016(a). The text of the Rule provides no directive on what "fees and costs" might be encompassed; it applies to filing applications by entities "seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate …". *Id.* Plaintiff identifies no rule or law which informs what "fees and costs" are "governed by Fed. R. Bank. P. 2016(a)." Indeed, there are none. Instead, as discussed in detail below, there is considerable disagreement amongst the federal courts in this country as to whether Rule 2016(a) applies at all to mortgagees, and if so, how. *See Wilborn v. Wells Fargo Bank, N.A.,* 609 F.3d 748, 755 and n.19 (5th Cir. 2010) (acknowledging disagreement and collecting cases); (Section III.C.2.a and b, *infra.*) There is no United States Supreme Court or even Fifth Circuit Court of Appeals precedent on these questions. Plaintiff contends that other jurisdictions' interpretations of these matters need not be considered in this case. Plaintiff, however, misunderstands the nature of his claims. Plaintiff is attempting to impose liability on Wells Fargo with regard to its adherence to a <u>rule of procedure</u>—<u>not a statute</u>—that may or may not have been applied by courts in individual bankruptcy proceedings in every jurisdiction in the country. Significantly, those proceedings are now over and the bankruptcy cases are closed. Whether or not adherence to Rule 2016(a) was actually required in those proceedings and how it was applied are certainly relevant issues to this case and must be examined in determining which former debtors fit within the class definition. (*See* Section II.C.2, *infra.*)

In sum, Plaintiff's class definition raises more questions than it can answer. The Court cannot determine whether a particular former debtor is a member of the proposed class or not

based on the definition offered. As such, certification should be denied. *See Morrow*, 277 F.R.D. at 187; *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 581 (N.D. Ill. 2005) (denying certification where class was inadequately defined and considerable cost and time would have to be expended by the court and parties before the class could even theoretically be identified).

It is noteworthy, too, that the requirement that each debtor has been discharged, and the fact that each debtor's case is more than likely closed, also impedes certification because the claims of these debtors are barred by *res judicata*. A discharge order in a chapter 13 case gives rise to the doctrine of *res judicata*. *See In re Thomas*, 291 B.R. 189, 198 (Bankr. M.D. Ala. 2003). And, orders closing bankruptcy cases "are, of course, final judgments on the merits." *Industrial Clearinghouse, Inc. v. Mims (In re Coastal Plains, Inc.)*, 338 B.R. 703, 713 n.5 (N.D. Tex. 2006); *see also Mason v. Integrity Ins. Co. (In re Mason)*, 709 F.2d 1313, 1316 (9th Cir. 1983) (noting "the only truly final order in a bankruptcy proceeding occurs when the order closing the case is filed"). While section 350 of the Code provides a bankruptcy case may be reopened for cause, case reopening will not undo the *res judicata* effect of the case closing order. *See In re Quist*, No. 94-03192, 2002 WL 33939726, at *2 (Bankr. D. Idaho May 23, 2002). Thus, any relief that would impact these bankruptcies is barred by *res judicata*. For this reason as well, certification should be denied. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275-279 (2010) (holding suggests finality trumps procedural defects in bankruptcy proceedings).

## C.    PLAINTIFF CANNOT SATISFY THE REQUIREMENTS OF RULE 23(a)

Even if Plaintiff's class definition could be re-written to alleviate the ambiguities and necessary complex individual analyses, that effort would be in vain because Plaintiff cannot satisfy the remaining requirements to maintain this case as a class action.

1.      __Plaintiff has not demonstrated numerosity.__

A number of factors govern the Rule 23(a)(1) determination of numerosity.  Such factors include the actual or estimated number of purported class members, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim, for example.  *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (citations omitted).  While there is no definitive threshold in terms of a number of purported class members which could satisfy this element, it is well-established that *some* evidence must be submitted on the issue.  *See, e.g., id.* (the plaintiff must submit some evidence of a "reasonable estimate of the number of purported class members"); *Fleming v. Travenol Labs., Inc.*, 707 F.2d 829, 833 (5th Cir. 1983) ("The mere allegation that the class is too numerous to make joinder practicable, by itself, is not sufficient to meet this prerequisite."); *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 329 (N.D. Tex. 2012) (denying certification where the plaintiff only submitted evidence demonstrating there may be two putative class members).

Plaintiff proffers no facts demonstrating sufficient numerosity.  Ambiguity impedes identification of the class members in the first place.  (*See* Section II.B., *supra.*)  Secondly, Plaintiff makes only a conclusory statement that the class consists of "thousands of former debtors disbursed [*sic*] throughout the United States."  (Plaintiff's Brief at p. 22.)  He also claims, without providing any proof, that his FDCPA class "is sufficiently numerous."  (*Id.* at p. 23.)  The only evidence he has submitted, though, concerns his own potential membership in a class and sub-class.  Evidence of only one member is insufficient to justify certification of a class.  *Conrad*, 283 F.R.D. at 329.

The only other proffer Plaintiff submits on the issue of numerosity is an 800-page spreadsheet which purports to identify "approximately 28,000 borrowers who had recoverable

fees assessed to their accounts during their Chapter 13 cases during the time period from June 1, 2002 to December 10, 2011." (Plaintiff's Brief at Ex. 7.)[5] This list does not translate into 28,000 putative class members, and Plaintiff does not explain how it supports numerosity. The list does not demonstrate that any fees assessed to the listed borrowers were not approved in some manner, or were not written off. The list says nothing of whether Wells Fargo was the servicer that assessed any fees, or how many of these loans are still serviced by Wells Fargo. There is no evidence that the loans of the borrowers on this list have not been paid off, modified, settled in some manner or that the property was not sold or foreclosed, all of which are individual questions which would moot the claims in this case. Moreover, Plaintiff has ignored that the list includes borrowers whose bankruptcies were pending in jurisdictions where no Rule 2016(a) application was required to assess or collect fees or costs. (*See* Section II.C.2.a and b, *infra*.) Plaintiff simply alleges the class is too numerous to make joinder practicable and does nothing more. He has failed to meet his burden on numerosity, and certification should be denied. *Fleming*, 707 F.2d at 833; *Conrad*, 283 F.R.D. at 329.

### 2.     Plaintiff cannot demonstrate commonality.

The commonality prong of Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members have suffered the same injury", *Wal-Mart*, 131 S.Ct. at 2551 (quotation omitted), or the same "instance of the defendant's injurious conduct", *In re Deepwater Horizon (Deepwater Horizon II )*, 739 F.3d 790, 810-811 (5th Cir. 2014). It demands more than the presentation of questions that are common to the class because "any competently crafted class complaint literally raises common questions." *Wal-Mart*, 131 S.Ct. at 2551 (internal quotation omitted). Further, the members of a proposed class do not establish that "their claims can productively be litigated at once," merely by alleging a violation of the same legal provision by

---

[5]     Wells Fargo produced this list at the Court's direction.

the same defendant. *Id.* (citations omitted). Rule 23(a)(2) can only be satisfied when it is shown that the claims of every class member "depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551 (emphasis in original); *see M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012). Plaintiff cannot satisfy Rule 23(a)(2).

Plaintiff does not articulate any common questions of law to support certification. He only simplistically claims his "allegations that Wells Fargo's collection practices constitute an abuse of process, violate Rule 2016(a), violate the plan and order confirming the plan, violate the automatic stay, violate the discharge injunction, violate the Bankruptcy Code and Rules, and violate the FDCPA involve common questions of law." (Plaintiff's Brief at p. 24.) Plaintiff's mere *ipse dixit* that all putative class members have suffered by a violation of the same laws by Wells Fargo, is inadequate as a matter of law to demonstrate commonality. *Wal-Mart*, 131 S.Ct. at 2551. Nor does Plaintiff articulate any common questions of fact for his claims. Plaintiff contends Rule 23(a)(2) is met because Wells Fargo allegedly "employed a pattern or practice of charging fees to debtors without any regard for Rule 2016(a)." (Plaintiff's Brief at p. 24.) This argument falls short. Even if true, it cannot determine liability for the class in this matter. A glaring analytical gap precludes commonality—Plaintiff has not and will not be able to prove common *unlawful* conduct or common *liability* with respect to the national class as a whole.

### a. Courts are split regarding whether Rule 2016 applies to mortgage fees and costs.

Plaintiff's class definition assumes Rule 2016(a) required court approval of all post-

petition fees and costs assessed by a mortgage lender or servicer in every United States judicial district prior to December 1, 2011. This is a demonstrably false assumption. Some courts in some jurisdictions adopted that position—two bankruptcy judges in the Southern District of Texas, for example. *See, e.g., Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289 (Bankr. S.D. Tex. 2007) (Bohm, J.); *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643 (Bankr. S.D. Tex. 2007) (Isgur, J.) ("*Texas Padilla*"). Those courts – and Plaintiff – rely on the theory that the assessment of post-petition fees and costs by a mortgage lender constitutes "seeking compensation for services, or reimbursement of necessary expenses from the estate," and therefore must be applied for and approved. *See* FED. R. BANK. P. 2016(a). This proposition is anything but uniform, and the treatment of post-petition fees and costs incurred by mortgage lenders or servicers is subject to widely differing case law, local rules and practices, which precludes class certification.

December 1, 2011, significantly, serves as the terminal date for Plaintiff's class. This date marks the effective date of Federal Rule of Bankruptcy Procedure 3002.1. This Rule provides in relevant part:

> (c) Notice of Fees, Expenses, and Charges. The holder of the claim shall file and serve … a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed and (2) that the holder asserts are recoverable ….

> (e) Determination of Fees, Expenses or Charges. On motion of the debtor … the court shall … determine whether payment of any claimed fee … is required by the underlying agreement….

FED. R. BANKR. P. 3002.1(c), (e). With this Rule's enactment, for the first time, a specific affirmative duty and procedure was required for the disclosure of post-petition fees and costs in Chapter 13 cases. *See* FED. R. BANK. P. 3002.1(c); FED. R. BANKR. P. 3002.1 Advisory Committee Notes; *Mattox v. Wells Fargo, N.A. (In re Mattox)*, Adv. No. 10-5041, 2011 WL

3626762, at *7 n. 5 (Bankr. E.D. Ky. Aug. 17, 2011) (dismissing claim that Wells Fargo improperly failed to disclose post-petition charges, noting soon-to-be effective Rule 3002.1); *In re Sheppard*, No. 10–33959–KRH, 2012 WL 1344112 (Bankr. E.D. Va. Apr. 18, 2012); *In re Hale*, No. 14-04337, 2015 WL 1263255, at *1 (Bankr. D.S.C. Mar. 16, 2015).

Prior to December 1, 2011, courts took a variety of approaches in addressing post-petition mortgage-related fees and costs. *Wilborn,* 609 F.3d at 755 and n.19 ("[t]here is disagreement among the bankruptcy courts as to the scope of the requirement under § 506(b) and Rule 2016 for lenders to obtain court approval before assessing contractually-allowed fees" and collecting cases); *In re Price*, 403 B.R. 775, 787 (Bankr. E.D. Ark. 2009) (noting disagreement among courts whether a Rule 2016 application is required to recover fees under §506(b), whether §506(b) and Rule 2016 create private rights of action, and whether §105 may be used to fashion remedies for violations of and Rule 2016); Eugene R. Wedoff, *Proposed New Bankruptcy Rules on Creditor Disclosure and Creditor Enforcement of the Disclosures—Open for Comment*, 83 Am. Bankr. L.J. 579, 582 (2009) (describing the range of local rules, court orders, model plans, etc. that were used to address mortgage fees and costs prior to enactment of Rule 3002.1); *In re Thongta*, 480 B.R. 317, 319 (Bankr. E.D. Wis. 2012) (same). Some courts held mortgage lenders have no duty to disclose post-petition fees under Bankruptcy Rule 2016(a). *See Padilla v. GMAC (In re Padilla)*, 389 B.R. 409, 437-43 (Bankr. E.D. Pa. 2008) ("*Pennsylvania Padilla*"); *In re Booth*, 399 B.R. 316, 322 (Bankr. E.D. Ark. 2009). Another court held post-petition fees assessed by a mortgage lender need not be disclosed if they were sought from the debtor as opposed to the estate. *See In re Hudak*, No. 08-10478-SBB, 2008 WL 4850196, at *7 (Bankr. D. Colo. Oct. 24, 2008). Other courts recognized some disclosure requirement, but in a manner other than a Rule 2016(a) application. *See In re Winston*, 416 B.R. 32, 44 (Bankr.

N.D.N.Y. 2009); *In re Aldrich*, No. BKR 08-00520, 2008 WL 4185989, *3 (N.D. Iowa Sept. 4, 2008); *In re Madison*, 337 B.R. 99 (Bankr. N.D. Miss. 2006); *In re Atwood*, 293 B.R. 227, 232 (BAP 9th Cir. 2003).

In some jurisdictions, local rules governed the disclosure or recovery of post-petition mortgage-related fees or costs prior to the effective date of Rule 3002.1. *See In re Monroy*, 650 F.3d 1300 (9th Cir. 2011) (approving local rule adopted by the Central District of California); *In re Ramsey*, 421 B.R. 431, 435-36 (Bankr. M.D. Tenn. 2009) (collecting cases); *see also In re Soto*, No. 12-12373, 2013 WL 323319 (Bankr. N.D. Cal. Jan. 26, 2013) (noting language in local rule is no longer necessary after adoption of Rule 3002.1). Some local rules specifically allowed post-petition mortgage-related fees or costs to be included in proofs of claim or stay relief orders. *See* District of Delaware LBR 3023-1. Other courts implemented predecessor versions of Rule 3002.1 *See* Bankr. N.D. Fla. LBR 3002.1-1(C); Bankr. D. Md. LBR 3002-1; Bankr. E.D. Wash. LBR 3002-1(c). Others established notice procedures or implemented specific forms for claiming post-petition fees. *See* Bankr. D. Kan. Standing Order 09-2; Bankr. W.D. Mo. MOW 3094.1.3; Bankr. S.D. Ill. Gen. Order 07-05; Bankr. D. Vt. Standing Order 10-02. Still others enacted specific rules establishing Rule 2016-based notice procedures. *See* Bankr. D. Mont. LBR 2016-1(F); Bankr. D.N.J. LBR 2016-1(j)(3). Others took hybrid approaches allowing proofs of claim or written notices for certain fees. *See* Bankr. D. Ore. Gen. Order 97-1. The Western District of Texas imposed a post-petition fee practice exclusively for cases in the Austin division. *See* Bankr. W.D. Tex. Standing Order Relating to Ongoing Mortgage Payments in Chapter 13 Cases in the Austin Division.[6]

Plaintiff's theory that Rule 2016(a) applied across the country in the manner urged has

---

[6]     Copies of these courts' local rules are attached as Exhibits A-1 through A-19 to the Declaration of Brendan Gaffney, Exhibit A to the Appendix to this Response.

been rejected by courts in Arkansas, Pennsylvania, and Colorado. Courts in Iowa, New York, Delaware, Florida, Washington, Kansas, Missouri, Illinois, Vermont, Montana, Oregon, the Western District of Texas, and the Ninth Circuit Bankruptcy Appellate Panel had their own disclosure requirements. Courts in Kentucky and Virginia recognized Rule 3002.1 created a disclosure procedure that had not existed before.

The variations in treatment of post-petition fees and costs in chapter 13 cases by districts, and by individual judges within those districts, is actually admitted by Plaintiff in Exhibit 8 to his Brief, a "Recoverability of Fees Matrix" dated May 16, 2007 (WF-Haynes -238356-238361). The matrix clearly establishes both the lack of commonality and typicality among the claims of the putative class. Nevertheless, Plaintiff asks this Court to ignore these varying views on whether and how Rule 2016(a) was to apply and asks that the Court read, retroactively, some unstated variant of Rule 3002.1 into pre-December 1, 2011 practice nationally. This is improper. Plaintiff is attempting to impose liability on Wells Fargo with regard to its adherence to a rule of procedure in individual bankruptcy proceedings, that are already closed, in every jurisdiction in the country. At base, whether or not adherence to the Rule was required in those proceedings is key to demonstrating commonality in this unique putative class action.[7] (*See also* Section II.D.,

---

[7]     Plaintiff suggests that Wells Fargo, in asking the Court to consider whether the bankruptcy courts in the putative class members bankruptcies required it to file applications under Rule 2016(a), is akin to asking the Court to suspend its independent judgment. (*See* Plaintiff's Brief at pp. 32-33.) Plaintiff has cited *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1175 (D.C. Cir. 1987) for this proposition. In that case, the court decided the issue of whether, after a case was transferred to it for MDL pre-trial management pursuant to 28 U.S.C. §1407, it should apply the interpretation of the federal law at issue of the transferor court, or whether it could apply its own interpretation. The court determined it could apply its own interpretation. It based this decision on the goal of generating one federal law and to further the goals of the MDL transfer statute. Contrary to Plaintiff's suggestion in his citation, the United States Supreme Court did not affirm any discussion of how independent judgment should be exercised. The Supreme Court did not reference the discussion on the federal court's consideration of other federal courts' decisions at all. *See Chan v. Korean Air Lines, Ltd.,* 109 S.Ct. 1676 (1989). Neither the Supreme Court case nor the D.C. Circuit Court case support Plaintiff's position here. Plaintiff is attempting to hold Wells Fargo liable for its conduct in closed bankruptcy cases throughout the nation with regard to its adherence to a rule of procedure in those courts. Rules of procedure cannot confer substantive rights. They only regulate a court's processes in the case before it. Principals of finality and comity prevent examination of Wells Fargo's compliance with procedural rules in those closed matters. (*See* Section II.B, *supra.;* Section II.D, *infra.*); *Espinosa,* 559 U.S. at 275-279; *see*

*supra.*)  Moreover, there is no binding Fifth Circuit precedent.  Neither the Fifth Circuit nor any other circuit has spoken on the novel propositions Plaintiff advances.

For all of the reasons discussed herein, simply raising the question of whether Wells Fargo "employed a pattern or practice of charging fees to debtors without any regard for Rule 2016(a)", will not drive a resolution of the class claims.  Plaintiff must demonstrate the alleged pattern or practice was universally unlawful.  The wide variance in how jurisdictions throughout the nation applied and interpreted Rule 2016(a) precludes such a finding and precludes commonality with respect to all of Plaintiff's claims.

### b. A split in the courts precludes any commonality with respect to when Rule 2016(a) would apply.

Even if it is assumed that Rule 2016(a) applied in every putative class member's bankruptcy case in the manner Plaintiff urges (which would be erroneous), the plain language of Rule 2016(a) impedes a finding of commonality across a national class, or even within a single district, with respect to claims concerning post-confirmation assessments.  Rule 2016(a) *only* applies to an entity seeking compensation or reimbursement from the property of the bankruptcy estate.  FED. R. BANK. P. 2016(a) ("An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, *from the estate* shall file an application." (emphasis added)).  The "estate" in a bankruptcy case is defined by section 541(a) of the Code and is comprised of all of the debtor's property on the filing date, along with certain property rights acquired by the debtor or the estate itself after the case is filed.  *See* 11 U.S.C. § 541(a)(1)-(7). The chapter 13 estate also includes a debtor's post-petition earnings.  11 U.S.C. § 1306(a)(2). However, these earnings may not remain in the estate in all cases.  Upon confirmation of a debtor's bankruptcy plan, property of the estate vests in the debtor, except as otherwise provided

*also U.S. v. AMC Entertainment, Inc.,* 549 F.3d 760, 773 (9th Cir. 2008); *Casa Orlando Apartments,* 624 F.3d at 199.

in the plan or the order confirming the plan. 11 U.S.C. § 1327(b). In other words, unless the plan or confirmation order provide otherwise, ownership and control of property of the estate, including post-petition earnings, transfers to the debtor upon plan confirmation.

Importantly for purposes of the commonality inquiry here, courts widely diverge on the question of the extent to which the "estate" continues to exist after confirmation. *See Barbosa v. Solomon,* 235 F.3d 31, 36 (1st Cir. 2000) ("the status of the property of the [bankruptcy] estate after the confirmation of a chapter 13 plan is a controversial issue in itself"); *In re: Rodriguez*, No. 09-20863-CIV, 2015 WL 9697324, at *4 (S.D. Fla. Dec. 9, 2015) ("courts are in disagreement as to the status of property [of the estate] before and after confirmation of a plan" (explaining three principal approaches)); *Woodard v. Taco Bueno Restaurants, Inc.*, No. CIV.A. 4:05-CV-804-Y, 2006 WL 3542693, at *8 (N.D. Tex. Dec. 8, 2006) (illustrating the unsettled nature of this issue, noting there is no Fifth Circuit precedent and proposing yet another approach). The Eleventh and Seventh Circuits have adopted the "estate transformation" approach. Under this approach, the "estate" exists from the petition date to the plan confirmation date and includes post-petition earnings under §1306(a)(2) of the Code; at confirmation, the estate continues to exist but only with respect to property necessary for the execution of the plan. *See Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1339-40 (11th Cir. 2000)[8]; *Black v. United States Postal Svc. (In re Heath),* 115 F.3d 521, 524 (7th Cir. 1997). Other courts adopt the "estate preservation" approach, by which all property of the estate post-petition remains property of the estate post-confirmation, notwithstanding §1327(b). *See, e.g., Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687, 690 (8th Cir. 1993); *Barbosa*, 235 F.3d at 35; *Aimese v. Kolenda (In re Kolenda)*, 212 B.R. 851 (W.D. Mich. 1997). In other words, under this

---

[8] *Cf. Waldron v. Brown (In re Waldron),* 536 F.3d 1239, 1242-43 (11th Cir. 2008) (distinguishing *Telfair* and holding that "New assets that a debtor acquires unexpectedly after confirmation by definition do not exist at confirmation and cannot be returned to them then.")

approach the estate persists throughout the entire bankruptcy case until discharge. Yet other courts adopted the "estate termination" approach, by which the estate ceases to exist at confirmation, unless the plan provides otherwise. *See, e.g., Black v. United States Postal Service California Franchise Tax Board v. Jones (In re Jones)*, 420 B.R. 506, 514-17 (9th Cir. B.A.P. 2009). Thus, if a mortgage lender "seeks" to recover fees and costs post-confirmation, in the Seventh, Ninth and Eleventh Circuits, Rule 2016(a) *cannot* apply because no estate exists at all, or at most, only the income devoted to the plan constitutes the estate.

As these authorities reveal, whether a putative class member is subject to "a fee or cost governed by Bankruptcy Rule 2016(a)", can only be determined by the law of the jurisdiction in which such putative class member filed bankruptcy, and by the terms of the putative class member's plan and the order confirming that plan. Under these circumstances, there can be no finding of commonality.

The public bankruptcy records exemplify this variability. For example, in 375 of the 704 cases in the putative class sample for which discovery was ordered in this case, the property of the estate vested in the debtor at confirmation, either expressly by the plan or confirmation order or by operation of law under § 1327(b). Thus, for 53.27% of the sample set, Rule 2016(a) is a nullity with respect to any assessment of post-confirmation fees. In 235 of the 704 cases (33.38%), the plans or confirmation orders provided that property of the estate did not vest in the debtor until discharge, plan completion or dismissal, and in 94 (13.35%) of the cases, the provisions for vesting were ambiguous or unavailable.[9]

As additional specific evidence of this variability, Wells Fargo proffers certified copies of case dockets, plans, confirmation orders, discharge orders and case closing orders in 94 cases

---

[9]     *See* Declaration of Thomas A. Connop, attached as Exhibit B to the Appendix to this Response.

from 60 judicial districts.[10]  The plans or confirmation orders in 55 of these cases vested property of the estate in the debtor at confirmation; delayed vesting until the case was discharged or closed in 33 cases; or are ambiguous in seven cases.  Within this sample, there are eight cases out of the Eastern District of Texas.  Notably, the plans or confirmation orders in *each* of the eight Eastern District of Texas cases provided for vesting of property of the estate in the debtor at confirmation.  This reveals Rule 2016(a) is inapplicable for any fees and costs assessed after confirmation in those cases.  The confirmation orders in three of those cases – debtors Brown (Ex. B-53), Isaac (Ex. B-57), and Vest (Ex. B-60) – were silent on vesting and thereby accepted the plan provisions vesting property of the estate in the debtors at confirmation.  The confirmation orders in the remaining five cases specifically vested property of the estate in the debtors at confirmation, but with a slight twist: although the property vested in the debtors, it was "… subject to the automatic stay of 11 U.S.C. § 362 until an order of Discharge or Dismissal is entered."[11]  Unlike these eight Eastern District cases, Plaintiff's own plan delayed vesting of property of the estate until discharge.  *See In re Braylon Alveral Haynes*, Case No. 03-60243, Dkt. Nos. 28 and 39.

Because the plain language of Rule 2016(a) limits its application to the actual recovery of compensation for services or reimbursement of necessary expenses from the estate, to be a member of Plaintiff's putative class Wells Fargo must actually seek funds from that debtor's estate property.  If the estate does not exist when the fees or costs are assessed, Rule 2016(a) cannot apply and the debtor cannot be a class member.

The cases from the few courts that have held Rule 2016(a) applies to post-confirmation

---

[10]    *See id.* at Exhibits B-1 to B-94.  This represents approximately 13.35% of the cases in the putative class sample and includes the cases hand-selected by Plaintiff's counsel for Rule 30(b)(6) examination.

[11]    *See id.* at B-54, B-55, B-56, B-58, and B-59.

fees and costs involve plans that provided that the estate did ***not*** vest in the debtor until discharge, and this provision was the lynch pin of those courts' decisions. In *Sanchez*, for example, the bankruptcy court relied upon a plan provision that delayed vesting of the estate in the debtor until discharge or dismissal in applying Rule 2016 to a mortgage lender's post-confirmation fees and costs.

> In the case at bar, the Plaintiffs' Chapter 13 estate continued to exist after confirmation due to express language in the Amended Plan. The Amended Plan sets forth that "all property of the Debtor's Estate shall vest in Debtor upon Debtor receiving a discharge under 11 U.S.C. Sec. 1328 or Debtor's Case being dismissed."… The Plaintiffs have not received a discharge under 11 U.S.C. § 1328 nor has the Plaintiffs' case been dismissed. Therefore, property of the Plaintiffs' Chapter 13 estate has not yet vested in the Plaintiffs. In other words, the Plaintiffs' estate still exists. Thus, the Court continues to maintain jurisdiction over the Plaintiffs' estate, and over controversies regarding post-confirmation (and, of course, pre-confirmation) charges to the estate.

*In re Sanchez*, 372 B.R. at 302; *accord Texas Padilla*, 379 B.R. at 657 ("The Rule's plain-language covers Reimbursable Expenses sought anytime after an estate comes into being and for so long as it remains in existence."). As the *Texas Padilla* decision would admit, if the estate no longer exists, then Rule 2016(a) does not apply. Such would be the case where the plan or confirmation order vested property of the estate in the debtor at confirmation. Thus, even those courts that applied Rule 2016(a) to post-confirmation fees and costs relied on the estate continuing to exist post-confirmation—which depends entirely on language of the plan and the confirmation order, and the case law binding in each jurisdiction. These are individualized inquiries, precluding a finding of commonality.

The same analysis of the existence of the estate specifically precludes any classwide claim for a violation of the automatic stay. Plaintiff alleges Wells Fargo violated the automatic stay of sub-sections (1) and (3) – (6) of 11 U.S.C. § 362(a) through the collection of post-petition fees. (*See* FAC at ¶¶ 76-84.) These Code provisions state:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of a case under this title;
>
>      *   *   *
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1), (3)-(6).  These sections distinguish between "property of the estate" and "property of the debtor" in defining acts which may violate the automatic stay.  The stay of acts "against property of the debtor" or "against the debtor" applies only to claims that arose before the bankruptcy case.  *See* 11 U.S.C. § 362(a)(1), (5) and (6).  Plaintiff's class definition seeks relief related to fees and costs "attributable to a time after the filing of a bankruptcy petition and before the date on which the individual received a chapter 13 discharge."  (FAC at ¶ 50.)  Therefore, there are no claims that arose "before commencement of the case," and these sections are inapplicable.  With respect to 11 U.S.C. § 362(a)(3) and (4), which stay acts against "property of the estate," as noted above whether property is "property of the estate" turns on the law of the jurisdiction where the case was filed and on the individual plan and confirmation order language.  *See* 11 U.S.C. §§ 1322(b)(9), 1327(b).  Those inquiries are purely individual, rendering a commonality finding impossible and class certification inappropriate.[12]

---

[12]       Whether a debtor claimed any exemptions must also be considered, as exemptions remove property from the estate.  *See* 11 U.S.C. § 522(b).  Moreover, once funds are delivered to a creditor they are no longer property of the estate.  *See Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 421 B.R. 356, 368 (Bankr. S.D. Tex. 2009).  Furthermore, recovery under section 362(k) requires a finding of willfulness, and internal notations of costs

### c. Every "consent order" and claim in each bankruptcy case must be examined.[13]

Prior to December 1, 2011, bankruptcy courts addressed post-petition fees through a variety of procedures, even if court approval was required. As noted above, in some instances plans and confirmation orders provided specific treatment of a debt and addressed payment of post-petition arrearages. According to Plaintiff, this is what happened in his own case. (*See, e.g.,* FAC at ¶ 33). Creditors could also claim post-petition fees in proofs of claim. *See* 11 U.S.C. §§ 502(a), 506. If fees made part of a proof of claim are improper, the Code provides for a claims objection process. *See* 11 U.S.C. § 502(a). Thus, this Court will have to analyze all orders resolving claim objections to see if the fees at issue were allowed through a different process, in order to determine if a debtor can be a class member pursuant to Plaintiff's definition.

Similarly, Wells Fargo often moved for relief from the automatic stay to pursue *in rem* remedies. *See* 11 U.S.C. § 362(d). Bankruptcy courts entered orders "terminating, annulling, modifying, or conditioning such stay." *See id.* Plaintiff alleges an agreed stay order in his own case provided for direct payments "outside the plan" and increased the secured claim to include post-petition fees and costs. (FAC at ¶¶ 31-32). That order also addressed the payment of the claim, requiring an amended proof of claim and a plan modification. (*Id.*) While the agreed order was not issued under Rule 2016(a), Plaintiff appears to treat this process as sufficient. Similar processes will have unfolded in countless different ways in bankruptcy cases across the country. Claims were filed, amended, objected to, allowed, denied, and withdrawn. Plans were

---

will not satisfy this requirement. 11 U.S.C. § 362(k); *Wilborn*, 609 F.3d at 756; *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3-4 (1st Cir. 2003); *Texas Padilla*, 379 B.R. at 662. Wells Fargo would have to actually try to collect a claim stayed by section 362 in order to violate this section, and the Court would need to perform a loan-by-loan analysis to make this determination. All of these additional considerations impede any finding of commonality here.

[13]     The term "consent order" is not defined in the Code or Rules, but is often used colloquially to refer to agreed orders entered by bankruptcy courts resolving contested matters, typically motions for relief from stay or debtor plan violations. Such orders commonly provide for payment of the movant's attorneys' fees and expenses.

filed, modified, and confirmed with various provisions regarding fees and costs. Some orders granting or denying automatic stay relief provided for post-petition fees and costs. Indeed, Plaintiff admits this issue by excluding from the class definition fees or costs that were approved by a bankruptcy order. (*See* FAC at ¶ 50*; see also* Plaintiff's Brief at p. 3 ("fees that were disclosed or approved by the bankruptcy court through a manner other than Fed. R. Bankr. P. 2016 are not at issue in this case.").) The only way to determine whether post-petition fees were allegedly improper in any bankruptcy case is to scrutinize each of these filings and any related orders. The Fifth Circuit has recognized that cases involving post-petition fees and costs in the bankruptcy context require analysis of "how and why certain fees were charged or paid" and require "an individual assessment of the claims." *Wilborn*, 609 F.3d at 756. As demonstrated herein, the putative class claims asserted in this case require analysis of individual bankruptcy filings, loan accounting, and collection efforts and communications following the bankruptcy case filing of each putative class member. There can be no finding of commonality under such circumstances.

> **d.** *There is no private right of action for a violation of Bankruptcy Rule of Procedure 2016(a).*

Commonality also fails in this case because Rule 2016(a) provides no substantive legal right on which the class can base its request for relief. A rule of procedure "shall not abridge, enlarge or modify any substantive rights...." 28 U.S.C. § 2072. Rather, it can only "regulate[] procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Matter of Adams*, 734 F.2d 1094, 1101 (5th Cir. 1984) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)). A rule of procedure cannot confer new substantive rights, and it cannot constitute a "law" under which a cause of action may arise. *Port Drum Co. v. Umphrey*, 852 F.2d 148, 150

(5th Cir. 1988) (referring to Federal Rule of Civil Procedure 11). Rule 2016(a) cannot of itself give rise to a private right of action pursuant to which Plaintiff and putative class members would be entitled to relief. *See Gin v. CitiMortgage, Inc. (In re Ginn)*, 465 B.R. 84 (Bankr. D.S.C. 2012) (dismissing claims that defendant violated Rule 2016(a) holding that the claims could not survive independently or in conjunction with section 105(a) of the Bankruptcy Code); *accord Ameriquest Mortgage Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43-44 (1st Cir. 2008) (section 105(a) does not itself create a private right of action, and it may only be invoked if the remedy "is demonstrably necessary to preserve a right elsewhere provided in the Code."); *In re Aldrich*, 2008 WL 4185989; *Mattox v. Wells Fargo, NA (In re Mattox)*, No. 07-51925, 2011 WL 3626762, at *5 (Bankr. E.D. Ky. Aug. 17, 2011); *Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert)*, 411 F.3d 452, 456 (3d Cir. 2005); *Pertuso v. Ford Motor Credit Co.*, 223 F.3d 417 (6th Cir. 2000); *Pompa v. Wells Fargo Home Mortgage, Inc. (In re Pompa),* No. 06-31759, 2012 WL 2571156, at *6 (Bankr. S.D. Tex. June 29, 2012).

Importantly, a rule of procedure may only "regulate proceedings among parties *already before the court in a particular case.*" *Port Drum*, 852 F.2d at 150 (emphasis added) (referring to Rule 11). A party may not "seek[] affirmative relief, on the basis of a rule, in a separate proceeding after the prior proceeding has been terminated." *Id.* at 150 n.2. This is exactly what Plaintiff is seeking to do on his own behalf and on behalf of the putative class. The bankruptcy cases in which Plaintiff argues Rule 2016(a) applications should have been made have been closed for at least four years and in many cases, much longer. Final relief has been provided to every putative class member. Plaintiff cannot now seek affirmative relief based on Wells Fargo's alleged violations of a procedural rule in those individual closed bankruptcy cases.

### 3. Plaintiff cannot demonstrate typicality.

Plaintiff also cannot satisfy the element of typicality. The test for typicality focuses on

the similarity between the named plaintiff's legal and remedial theories and the theories of those whom he purports to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (citing *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). As set forth above, the essential characteristics of the putative class members' claims will vary considerably, including with respect to whether Rule 2016(a) applied to their bankruptcy cases and, if so, how it applied. (*See* Section III.C.2.) In the face of such variability, not just in factual matters, but in the legal standards applicable to the claims of the nationwide putative class, typicality must fail. *See Stirman*, 280 F.3d at 562. (plaintiff's claims were not typical of the class because state law supplying the basis of liability for the class claims varied).

## D.    PLAINTIFF CANNOT SATISFY THE REQUIREMENTS OF RULE 23(B)(2)

Just as Plaintiff cannot prove liability with respect to the putative class, he also cannot prove entitlement to injunctive relief with respect to that putative class. An injunctive class may only be maintained if the requirements of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Due to "the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group…" *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998); *FPX, LLC v. Google, Inc.*, 276 F.R.D. 543, 550 (E.D. Tex. 2011). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 131 S. Ct. at 2557 (internal quotation omitted); *see Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n,*

624 F.3d 185, 198 (5th Cir. 2010) (requiring uniformity of injury); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273-74 (S.D. Fla. 2003) (noting the requirement of cohesiveness is essential in an injunctive class because unnamed members are bound by the action without the opportunity to opt out). To qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way. *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524-25 (5th Cir. 2007) (citing *Bolin*, 231 F.3d at 975).

As set forth above, the putative class members across the nation have not been harmed at all, but most certainly if any harm occurred, they have not been harmed in the same way. Wells Fargo's failure to follow the alleged procedure set forth in Rule 2016(a) cannot be declared unlawful as to all of the class members. Many courts did not require mortgage lenders or servicers to comply with Rule 2016(a). Moreover, many courts did not consider the "estate" to exist post-confirmation rendering Rule 2016(a) a nullity at that point in time. For all of the reasons discussed, above, the injunctive relief requested is not appropriate for all of the putative class members.

Moreover, this Court lacks the judicial power to grant the injunctive relief requested to all of the putative class members. Plaintiff asks the Court to issue injunctive relief based on section 105(a) of the Bankruptcy Code. Section 105(a) may bestow a court with equitable contempt power; however, it is well-settled that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985). Plaintiff expressly asks this Court to enforce the plans, confirmation orders, automatic stays and discharge injunctions applicable to countless borrowers by bankruptcy courts throughout the country. The power to enforce compliance with such orders and injunctions rests only with the courts that issued them. *Waffenschmidt*, 763 F.2d at 716; *Suntex*

*Dairy v. Bergland*, 591 F.2d 1063, 1068 (5th Cir. 1979) ("If [conduct] is found by the Missouri court to be in violation of its injunction, it may be in contempt of that court. The appropriate response to such contempt, if it exists, is a matter for the Missouri district court under that court's continuing jurisdiction to enforce or protect its injunction order."); *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970-71 (11th Cir. 2012). The context of a putative class action does not change this rule of law. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916-917 (7th Cir. 2001); *Guetling v. Household Fin. Servs., Inc.*, 312 B.R. 699, 704 (M.D. Fla. 2004); *Beck v. Gold Key Lease, Inc. (In re Beck)*, 283 B.R 163, 166-174 (E.D. Pa. 2002); *Singleton v. Wells Fargo Bank, N.A. (In re Singleton)*, 284 B.R. 322, 324-325 (D. R.I. 2002); *Williams v. Sears, Roebuck and Co. (In re Williams)*, 244 B.R. 858, 867 (S.D. Ga. 2000); *see also Wilborn*, 609 F.3d at 754 (citing *Waffenschmidt* for the proposition that Rule 23, while applicable in bankruptcy contexts, "may not extend a court's jurisdiction").

Even if this Court were to find section 105(a) supplies sufficient power to enforce other courts' orders, it should not, as a matter of comity, exercise this power. "[A] federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see Wilborn*, 609 F.3d at 754 (the rule of class actions in the bankruptcy context "should be upheld so long as it otherwise offends no substantive rights."). Where there are established differences concerning the application of the law at issue, and where liability cannot be proven for the class as a whole, the class should not be certified. *Casa Orlando Apartments, Ltd.*, 624 F.3d at 199; *U.S. v. AMC Entertainment, Inc.*, 549 F.3d 760, 773 (9th Cir. 2008) ("[T]he district court's injunction is in direct conflict with the Fifth Circuit's

precedent…. Principles of comity require that, once a sister circuit has spoken to an issue, that pronouncement is the law of that geographical area…. Thus, we hold the district court abused its discretion in issuing the nationwide injunction…"). There is no consensus among the lower courts and there is no pronouncement by the United States Supreme Court or any Court of Appeals on the application of Rule 2016(a) in this context. Thus, Plaintiff's request to have this Court apply his interpretation of a rule of procedure across the country by issuing an injunction which would have a direct effect on long-closed proceedings before courts in every district, some of which have disagreed with Plaintiff's interpretation, is not appropriate. Certification of a nationwide class in this instance would improperly interfere with the litigation of the same issue in other judicial districts. As such, certification should be denied. *Califano*, 442 U.S. at 702.

## E. PLAINTIFF CANNOT MEET THE PREREQUISITES FOR AN FDCPA SUB-CLASS

In addition to the reasons set forth above, which are applicable to all of his claims, Plaintiff cannot meet the prerequisites to certify an FDCPA sub-class for several independent reasons.[14] The substantive law, the elements of the claim, Wells Fargo's defenses, and the facts necessary to demonstrate liability preclude classwide treatment of this claim. *See Stukenberg*, 675 F.3d at 837; *FPX,* 276 F.R.D. at 548.

The elements of an FDCPA cause of action are: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a "debt collector" as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *Vick v. NCO Fin. Sys., Inc.*, No. 2:09-CV-114-TJW-CE, 2011 WL 1193027, at *2 (E.D. Tex. Mar. 7, 2011) report and recommendation adopted, No. 2:09-CV-114-TJW-CE, 2011 WL 1157710 (E.D. Tex. Mar. 28, 2011) (citing *Stewart v. Alonzo*, Civ. A. No. C-08-347, 2009

---

[14] This "sub-class" is a creature of Plaintiff's Brief. It is not requested in his Motion or in the FAC.

WL 174938, at *2 (S.D. Tex. 2009)).  "Only parties who meet the statutory definition of 'debt collector' are subject to civil liability under the FDCPA."  *Bacon v. Sw. Airlines Co.*, No. Civ. A. 3:97–CV–2211–L, 1999 WL 134569, *2 (N.D. Tex. Mar. 5, 1999) (quoting *KPMG Peat Marwick v. Texas Commerce Bank*, 976 F.Supp. 623, 632 (S.D. Tex. 1997)).  The FDCPA defines a debt collector as "any person…who regularly collects or attempts to collect…debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  The term "debt collector" does not, however, include any person collecting or attempting to collect any debt owed or due, or asserted to be owed or due, to another to the extent such activity concerns a debt which was originated by such person, nor does it concern a debt which was not in default at the time it was obtained by such person.  15 U.S.C. § 1692a(6)(F)(ii) and (iii).

The Fifth Circuit has interpreted these sections to mean a consumer's "creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned" do not qualify as "debt collectors" under the FDCPA.  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citations omitted); *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007), aff'd, 269 Fed. Appx. 523 (5th Cir. 2008); *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 456 (E.D. Tex. 2011); *Vick*, 2011 WL 1193027, at *2.

Plaintiff proposes that his FDCPA sub-class include all putative class members who were assessed a fee between April 30, 2007, and April 30, 2008.  This sub-class is not ascertainable.  It would include scores of individuals not entitled to relief because, for example, they did not experience any collection activity from Wells Fargo in violation of the FDCPA during that time period, or Wells Fargo does not qualify as a "debt collector" with respect to the borrower at all.[15]

---

[15]     In his Brief, Plaintiff appears to recognize that putative sub-class members whose loans were serviced by Wells Fargo before falling into default should not be members of the sub-class.  (Plaintiff's Brief at p. 31.)

As set forth below, resolving these questions involves a detailed loan-by-loan analysis, inappropriate for classwide treatment. *See Morrow*, 277 F.R.D. at 187 (The court must be able to ascertain the members of the putative class "without having to answer numerous fact-intensive questions.").

Commonality is also defeated with respect to the FDCPA sub-class. There can be no common injury or common injurious conduct across the class. To determine whether Wells Fargo is even subject to the FDCPA as a "debt collector", the Court would need to examine the mortgage and note of each putative sub-class member to determine if Wells Fargo originated the debt. If it did, it can have no FDCPA liability with respect to that borrower. *See* 15 U.S.C. § 1692a(6)(F)(ii); *Perry*, 756 F.2d at 1208. If Wells Fargo did not originate the debt, the Court would then need to examine the account status on the date Wells Fargo began servicing each loan to determine if it was in default at the time servicing began. If the loan was current, Wells Fargo is not a "debt collector" and cannot be held liable under the FDCPA. *See* 15 U.S.C. § 1692a(6)(F)(iii); *Perry*, 756 F.2d at 1208. These inquiries require fact-intensive review of account histories and loan documents, which is inappropriate across a nationwide class of borrowers. Moreover, to determine whether any collection activity took place during the one year time period, the Court would need to review the correspondence files and loan history of each putative class member for evidence of collection activity. Plaintiff has pleaded no common collection activity. For all of these reasons, Plaintiff has not and cannot demonstrate compliance with Rule 23(a)(2) with respect to his FDCPA claim. Commonality, and with it, certification, fails. *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009) (That the class might include some members who are not entitled to recover will not bar a class action unless the

However, he does not expressly limit the class anywhere in the Motion or the FAC. Moreover, he ignores the individual analysis that would be required to limit the class in this required manner.

determination of those ineligible persons would require extensive effort and thereby defeat the efficiencies of a class action); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (considering the existence of "complex individualized determinations").

A review of the loan histories and contracts for a sample of putative class members illustrates the lack of commonality sufficient to drive a resolution for Plaintiff's proposed FDCPA sub-class.[16] Out of a sample set of 94 borrowers, it appears Wells Fargo does not qualify as a debt collector under the FDCPA with respect to at least 76 of those borrowers, either as originator of the loan, or because the loan was current when Wells Fargo began servicing.[17]

No common entitlement to injunctive relief can be proven with respect to the class as a whole either. *See* FED. R. CIV. P. 23(b)(2). As an initial matter, Plaintiff has not detailed what injunctive relief he seeks with respect to the sub-class or how the relief would benefit the class. Regardless, injunctive relief is not an available remedy for an FDCPA violation. *Sibley v. Diversified Collection Servs., Inc.*, No. Civ. A. 396-CV-0816-, 1998 WL 355592, at *5 (N.D. Tex. June 30, 1998) ("Assuming *arguendo* that the FDCPA claim can be read to include a request for injunctive relief, this remedy is not available to private litigants."); *Reyes v. Julia Place Condos. Homeowners Ass'n, Inc.*, No. 12-2043, 2014 WL 7330602, at *2 (E.D. La. Dec. 18, 2014) ("[G]iven the Fifth Circuit's previous pronouncements on the question of injunctive relief under the FDCPA and the near-uniform denial of injunctive relief to other private FDCPA litigants in other jurisdictions, this Court likewise declines to extend injunctive relief in this case."); *see also Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 (5th Cir. 2000) ("[A]lthough

---

[16]     These putative class members' loan histories include the twenty putative class members chosen by Plaintiff's counsel for examination with Wells Fargo corporate representative.

[17]     *See* Declaration of Amber N. Ott, attached as Exhibit C to the Appendix to this Response and Exhibits C-1 to C-94; Exhibits D-1 to D-94 (Proofs of Claim) and Exhibit E (FDCPA "Debt Collector" Status Chart), attached to the Declaration of Thomas A. Connop, Exhibit B to the Appendix to this Response. Exhibits C-1 to C-94 and Exhibit E are filed under seal.

this circuit has not definitively ruled on the issue, courts uniformly hold that the FDCPA does not authorize equitable relief.") (collecting cases); *Weiss v. Regal Collections*, 385 F.3d 337 (3rd Cir. 2004) ("Most courts have found equitable relief unavailable under the [FDCPA], at least with respect to private actions.") (internal citations omitted); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982) (stating in dicta that there is no injunctive relief under the FDCPA).

With respect to Plaintiff's alternative claim for a statutory damages class under Rule 23(b)(3), Plaintiff cannot meet the predominance and superiority requirements for certification. "[T]he court must … determine that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members' and that 'a class is superior to other available methods for the fair and efficient adjudication of the controversy.'" *Barnett v. Experian Info. Solutions*, No. CIV.A. 2:00CV175, 2004 WL 4032909, at *1 (E.D. Tex. Sept. 30, 2004)  (quoting FED. R. CIV .P. 23(b)(3) and citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997)).  These inquiries are more demanding that the commonality prong for certification.  Because individual issues preclude a finding of commonality, the same issues will preclude any finding of predominance and superiority as well.  (*See* Section III.C.2, *supra*.)

## F. THIS CASE IS NOT IDENTICAL TO *IN RE RODRIGIUEZ* AND THE RELIEF SOUGHT HERE HAS NOT BEEN "PRE-APPROVED" BY THE FIFTH CIRCUIT

Throughout Plaintiff's Brief, Plaintiff attempts to draw analogies between this case and *In re Rodgriguez,* Adversary No. 08–01004, decided by the United States Bankruptcy Court for the Southern District of Texas.  (*See, e.g.,* Plaintiff's Brief at p. 2.)  Plaintiff contends he is complaining here about the same conduct addressed in that case, that Wells Fargo's systems can be queried in the same manner as it was allegedly established Countrywide's could, and that he seeks the same relief.  (*Id.*)  He contends the Fifth Circuit "pre-approved" the injunction

ultimately issued in that case and, thereby, he implies the Fifth Circuit has "pre-approved" the injunction he seeks here.

Plaintiff is wrong all accounts. Importantly, this case differs because it is a national putative class action, while the bankruptcy court in *In re Rodgriguez* confined its ruling to debtors with bankruptcies pending in the Southern District Bankruptcy Court. Although the plaintiffs in that case originally sought a national class, the bankruptcy court did not interfere with the interpretation of Rule 2016(a) by courts in other jurisdictions, or interfere with the administration and disposition of myriad cases from other jurisdictions as Plaintiff seeks to do here. In *In re Rodriguez*, the bankruptcy court's ruling—proper or not, as its judgment was not appealed—was limited to plans, orders and discharge injunctions in chapter 13 cases administered in only that district. Here, the Court must answer the question of whether it can pass upon the plans, orders and discharge injunctions of the bankruptcy courts in all 94 judicial districts in this nation. The *Rodriguez* court did not address comity concerns or limitations to the court's contempt power even among the judges in that district, much less nationally. And, although the Fifth Circuit affirmed the bankruptcy court's certification order, it certainly cannot be fairly argued that the Fifth Circuit "pre-approved" the injunction sought here. *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 695 F.3d 360 (5th Cir. 2012); *cf. Wilborn*, 609 F.3d at 754 (citing *Waffenschmidt*, 763 F.2d at 716, which held "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction", for the proposition that Rule 23, while applicable in bankruptcy contexts, "may not extend a court's jurisdiction").

Moreover, as will be evident at the class certification hearing, Plaintiff's Brief takes great liberty in its characterization of the ease with which Wells Fargo can query its computer system and immediately determine who should be a class member in this case. Plaintiff has provided no

evidence of his sweeping claims about the capabilities of Wells Fargo's systems, and he will not be able to ultimately support those claims with facts at the hearing.

### III.    CONCLUSION

Plaintiff's Brief is largely an attack on Wells Fargo in general. He has launched numerous hyperbolic arguments claiming Wells Fargo systematically and willfully "robbed" Plaintiff and the putative class members of their "fresh start," accusing Wells Fargo of acting "illegally," "threatening" borrowers, engaging in "abusive" conduct, and charging "secret" and "hidden" fees and costs.[18] Yet, Plaintiff does not and cannot contest that the fees and costs at issue in this case were proper and allowable pursuant to the debtors' loan contracts. Putting the matter in perspective and distilling the true issue, Plaintiff's only real complaint is that Wells Fargo allegedly failed to file applications under Rule 2016(a) before assessing lawful fees and costs it incurred during a borrower's bankruptcy.

Plaintiff's tone aside, this is a class certification motion, and Wells Fargo has shown that this case does not meet the requirements of Rule 23(a) or 23(b)(2). As set forth herein, and as will be demonstrated at the hearing, Plaintiff's request for class certification of all of his claims should be denied.

WHEREFORE, Wells Fargo respectfully requests that the Court deny Plaintiff's Motion, and strike the class allegations from Plaintiff's Amended Complaint. Wells Fargo also requests such other and further relief to which it may show itself entitled.

---

[18]    These terms are interspersed throughout Plaintiff's Brief no less than twenty times.

Dated: January 22, 2016

Respectfully submitted,

_/s/ Thomas A. Connop_

Robert T. Mowrey
  Lead Attorney
    State Bar No. 14607500
Thomas A. Connop
    State Bar No. 04702500
Thomas G. Yoxall
    State Bar No. 00785304
Elizabeth K. Duffy
    State Bar No. 24050535
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
(214) 740-8000
(214) 740-8800 Facsimile

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's electronic service on this the 22nd day of January 2016 on the following counsel of record:

**James A. Holmes**
THE LAW OFFICE OF JAMES A. HOLMES, P.C.
202 South Marshall
Henderson, TX 75654

**Stephen C. Mahaffey**
MAHAFFEY & MAHAFFEY, P.C.
124 West Sabine Street
Carthage, TX 75631

**Karen L. Kellett**
ARMSTRONG, KELLETT & BARTHOLOW, PLLC
11300 N. Central Expwy., Suite. 301
Dallas, TX 75243

_Attorneys for Plaintiff_

_/s/ Thomas A. Connop_

Thomas A. Connop