IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BRAYLON HAYNES, Individually & on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § § | |
| V. | § § | Case No. 2:08-CV-183 |
| (1) WELLS FARGO BANK, N.A., & (2) WELLS FARGO HOME MORTGAGE, | § § § § | |
| Defendants. | § § | |

DEFENDANT'S POST-HEARING BRIEF
IN OPPOSITION TO CLASS CERTIFICATION

On February 18, 2016, the Court heard the parties' presentations of evidence and argument on the issue of whether this case should proceed as a nationwide class action. During argument, the Court questioned counsel for Defendant Wells Fargo Bank, N.A. ("Wells Fargo")[1] on how the injunctive relief requested in this case, if ultimately granted, would be inconsistent with the proceedings and orders in the closed bankruptcy cases of the putative class members across the nation. Wells Fargo files this Post-Hearing Brief to further address this question for the Court.

A.     THE RELIEF REQUESTED IN THIS CASE WOULD AFFECT THOUSANDS OF PREVIOUS LAWSUITS

Plaintiff seeks to certify a class comprised of thousands of former debtors who filed cases under Chapter 13 of the Bankruptcy Code. Each of these cases was, effectively, a separate lawsuit in which the rights of the debtor and his or her creditors were adjudicated. Creditors were given notice of the filing. They were required to file proofs of claim, or their claims would

---

[1]     The term "Wells Fargo" includes its division, Wells Fargo Home Mortgage.

DEFENDANT'S POST-HEARING BRIEF
IN OPPOSITION TO CLASS CERTIFICATION                                                                 1

be barred. The debtors' plans, as illustrated by Wells Fargo's Exhibits B-1 through B-94, contained unique provisions for the adjustment of the debtor-creditor relationship. These cases—these lawsuits—were adjudicated by bankruptcy courts in every one of the 94 judicial districts in this country. Every one of the putative class members, including Plaintiff Braylon Haynes ("Plaintiff"), was awarded final relief in his or her lawsuit—a discharge from bankruptcy. The cases have been closed for a minimum of four years. Many have been closed for much longer, and some cases concluded almost fourteen years ago.

Now, in this separate action, so many years later, in the Eastern District of Texas, Plaintiff complains that Wells Fargo violated Federal Rule of Bankruptcy Procedure 2016(a) in each of those previous lawsuits around the country. Plaintiff complains that Wells Fargo failed to file a Rule 2016(a) application with the bankruptcy courts before assessing fees and costs to the putative class members' loan accounts while their bankruptcy cases were pending. Plaintiff argues that the putative class members were entitled to notice and a determination from their bankruptcy courts as to whether the fees and costs assessed were reasonable before they were assessed to their accounts. Plaintiff argues Wells Fargo deprived the putative class members of this procedural right. Plaintiff claims Wells Fargo's failure to act as allegedly required under Rule 2016(a) violated the procedural rule, as well as the automatic stays, the plans and orders, and the discharge injunctions in those bankruptcy cases, and the Fair Debt Collection Practices Act. Thus, in this separate proceeding, Plaintiff is seeking affirmative relief for Wells Fargo's alleged failure to follow the procedural rule in each putative class member's case. (*See* Reporter's Transcript of Class Certification Hearing on February 18, 2016 at 26:19-21 and 27:18-28:5.) Plaintiff asks this Court to use its equitable powers to 1) issue a prohibitory injunction to prevent Wells Fargo from ever collecting the fees and costs assessed to a putative

class member's account, unless it re-opens the class member's bankruptcy case and files a Rule 2016(a) application, and 2) with respect to those accounts for which Wells Fargo already collected and applied payments to the fees and costs, Plaintiff requests a mandatory injunction requiring Wells Fargo to affirmatively re-apply the payments to principal and interest owing on the putative class member's mortgage loan.

This case cannot proceed as a class action for myriad reasons which have been discussed in Wells Fargo's briefing and at the hearing. The following reasons exemplify why certifying this case would interfere with the putative class members' closed bankruptcy cases.

**B.      EVEN IF VIOLATIONS OF A PROCEDURAL RULE OCCURRED IN THE BANKRUPTCY CASES, THIS COURT CANNOT REDRESS SUCH VIOLATIONS**

First, Plaintiff's attempt to seek relief based on an alleged violation of procedural rule in a separate proceeding after the proceeding has been terminated is improper; a rule of procedure provides no such basis for legal action or relief. *Port Drum Co. v. Umphrey*, 852 F.2d 148, 150-151 (5th Cir. 1988). A rule of procedure governs the proceedings among parties already before the court in a particular case. *Id.* It cannot provide grounds on which to compensate wronged parties by means of affirmative relief in a separate action. *Id.*; *see also Landgraf v. USI Film Prod.,* 511 U.S. 244 (1994) (explaining "rules of procedure regulate secondary conduct rather than primary conduct"). Plaintiff's effort to state claims in this separate case based on alleged violations of Rule 2016(a) he claims took place in thousands of already closed bankruptcy cases is inconsistent with the purpose and scope of the rules of procedure. To the extent violations of procedure occurred in any putative class member's bankruptcy case, such violations would be matters for the court that administered that case to address—not this Court in this separate matter. *See Port Drum*, 852 F.2d at 150-151; 28 U.S.C. § 2072 (A rule of procedure "shall not

abridge, enlarge or modify any substantive rights...."). This Court cannot revisit procedural matters in the thousands of already closed bankruptcy cases.[2] As such, certification should be denied, and Plaintiff's individual claims should be dismissed.

### C.     PLAINTIFF IS ASKING THIS COURT TO SUBSTITUTE ITS JUDGMENT FOR THAT OF BANKRUPTCY COURTS AROUND THE COUNTRY AND SUPPLY A REMEDY IN CASES WHERE NONE MAY HAVE EXISTED

This lawsuit also cannot be sustained as a national class action because, in order to find commonality and typicality of claims, and common entitlement to injunctive relief amongst the members of the class, this Court would need to substitute its judgment for that of bankruptcy courts across the nation on two key issues.  First, this Court would need to substitute its judgment for that of the bankruptcy courts in the 94 judicial districts and unequivocally find that in each one of the now-closed putative class members' bankruptcy cases, mortgage servicers were bound by Rule 2016(a) and required to apply to the bankruptcy court before assessing permissible fees and costs pursuant to the loan contract to the debtor's mortgage account.  (*See* Reporter's Transcript of Class Certification Hearing on February 18, 2016 at 26:19-21 (Plaintiff's counsel indicates they are expressly "asking this court simply to declare the law as to the class, as to the applicability of Bankruptcy Rule 2016" and 27:18-28:5 ("The common question, your Honor, as I said, to the class will be does the assessment of fees during bankruptcy without court approval violate Bankruptcy Rule 2016.").)  Second, this Court would *also* need to substitute its judgment for that of the bankruptcy courts in the 94 judicial districts and unequivocally find that the debtor's post-petition earnings constituted property of the estate after confirmation of the debtor's plan *in every single case* such that Rule 2016(a) should have

---

[2]     As previously set forth in Wells Fargo's briefing, the claims of these debtors are also barred by *res judicata.*

applied post-confirmation.[3] Neither of these conclusions can or should be reached by this Court.

1. **This Court should not decide for all of the bankruptcy courts at issue that Rule 2016(a) applied to mortgage servicers assessing contractual fees and costs.**

It is an undeniable fact that Rule 2016(a) was not applied uniformly by the judges in the thousands of bankruptcy cases at issue. Plaintiff does not dispute this. He argues, instead, this Court need not concern itself with the varied ways in which other courts around the country treated post-petition fees and costs assessed by servicers during Chapter 13 proceedings before December 1, 2011. Plaintiff argues this case concerns only federal law, and the goal of federal jurisprudence is to have one federal law. Plaintiff, however, fails or refuses to acknowledge his case is uniquely dependent on the proceedings in the underlying bankruptcy litigation.

Plaintiff is attempting to hold Wells Fargo liable for its conduct in bankruptcy cases before bankruptcy judges in every one of the nation's 94 judicial districts from 2002 to December 1, 2011. This is not a lawsuit involving alleged violations of standalone federal laws, like ERISA, securities regulation, antitrust or patent laws. Instead, Plaintiff argues Wells Fargo failed to adhere to a bankruptcy rule of procedure during separate litigation with debtors before different bankruptcy judges across the country. At base, whether or not adherence to Rule 2016(a) was required, and how and when it was required, in those proceedings during that time frame are key to demonstrating liability. Consequently these same issues are key to demonstrating commonality, typicality, and whether injunctive relief is appropriate for the class as a whole in this putative class action.

Right or wrong, bankruptcy courts around the country interpreted this rule differently. For example, the United States Bankruptcy Court for the Eastern District of Pennsylvania held

---

[3] Wells Fargo does not concede Rule 2016(a) applies to Plaintiff's claims; however, by its terms the rule requires that the compensation or expenses in question be sought "from the estate."

that Wells Fargo need not disclose and apply for permission before assessing fees and costs to Chapter 13 debtors' accounts during bankruptcy. *See Padilla v. GMAC (In re Padilla)*, 389 B.R. 409, 437-43 (Bankr. E.D. Pa. 2008). Plaintiff's proposed class includes former debtors who had bankruptcy cases in this district. What legal principle permits this Court to afford those former debtors an opportunity now, years after their bankruptcy cases were closed, to argue Wells Fargo—and the Pennsylvania bankruptcy court—were wrong? What legal principle permits these putative class members to seek relief years after the final judgment that the Pennsylvania bankruptcy court would have not allowed? The same question must be asked with regard to the bankruptcy case of each member of Plaintiff's proposed class.

The very fact that these questions must be asked precludes class certification. Principles of comity and finality should prevent this Court from substituting its judgment on an issue that has been adjudicated differently in many putative class members' jurisdictions. *See U.S. v. AMC Entertainment, Inc.*, 549 F.3d 760, 773 (9th Cir. 2008). Moreover, principles of comity and finality should prevent this Court from substituting its judgment on the issue in any jurisdiction because, across the country, whether, when and how Rule 2016(a) should apply to mortgage servicers, was not settled and, in fact, was strongly debated. *See Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*, 609 F.3d 748, 755 and n.19 (5th Cir. 2010) (noting the disagreement among the bankruptcy courts as to the application of Rule 2016 to lenders).

It is also important to recognize that jurisprudence on these questions was cut short by the enactment of Bankruptcy Rule of Procedure 3002.1, which expressly regulates the conduct at issue in this case after December 1, 2011. Tellingly, Rule 3002.1 did not incorporate any of the provisions of Rule 2016(a) directly or by reference. Subsequently, with the new rule in effect, courts have not had further occasion to opine on the applicability of Rule 2016(a) to mortgage

DEFENDANT'S POST-HEARING BRIEF
IN OPPOSITION TO CLASS CERTIFICATION                                                    6

servicers, like Wells Fargo before December 1, 2011. It would be improper for this Court to now

substitute its judgment for courts across the nation.[4]

<b>2. <u>This Court should not decide for all of the bankruptcy courts at issue<br>whether the former debtor's post-petition earnings constituted property of<br>the estate after confirmation.</u></b>

Even if this Court were to find that it may address whether Rule 2016(a) applied in the

manner urged by Plaintiff in each of the nation's 94 judicial districts, which it should not do, the

Court would also have to then make a second decision for each of these courts. To grant the

relief requested by Plaintiff, this Court would have to decide that each putative class member's

post-petition earnings constituted property of their estate after confirmation of their plan—in

every single case.

By its express terms, Rule 2016(a) is inapplicable after the estate ceases to exist. *See*

FED. R. BANK. P. 2016(a) ("An entity seeking interim or final compensation for services, or

reimbursement of necessary expenses, from the estate shall file an application....").  Plaintiff

argues the estate continues to exist all throughout the bankruptcy notwithstanding the terms of

the plan or confirmation order, contrary to the language of 11 U.S.C. § 1327(b); thus, Plaintiff

argues this Rule should have been adhered to pre- and post-confirmation, until discharge, in

bankruptcies throughout the country.  Plaintiff relies on Judge Isgur's reasoning in *In re*

*Rodgriguez*, 421 B.R. 356 (S.D. Tex. 2009) and also claims, incorrectly, that the United States

Supreme Court has definitively resolved the issue of the estate's continued existence until

discharge in *Harris v. Viegelahn*, 135 S.Ct. 1829 (2015).

This issue was not addressed at all in *Viegelahn*.  In that case, the Supreme Court held

that undistributed plan payments made by a debtor from his or her wages and held by the

---

[4] 28 U.S.C. § 2072 (A rule of procedure "shall not abridge, enlarge or modify any substantive rights....");
*Port Drum*, 852 F.2d at 150-151.

Chapter 13 trustee at time of the case's conversion to Chapter 7, must be returned to the debtor, not distributed to creditors. *Viegelahn*, 135 S. Ct. at 1833.  The Court did not discuss whether money not in the trustee's hands for distribution constituted estate property.[5]  There was no discussion of the varying ways in which courts have interpreted the sections of the Bankruptcy Code leading to the conflicting estate termination decisions, much less a decision ending the controversy.

Moreover, in the Southern District of Texas, where the *In re Rodriguez* case was filed and where only a district-wide class was certified, vesting at discharge—not confirmation—is required by the district's form bankruptcy plan.  (*See* Uniform Plan and Motion for Valuation of Collateral in Chapter 13 cases, accessible at http://www.txs.uscourts.gov/sites/txs/files/1115plansavingsmods.pdf (accessed on Feb. 26, 2016).[6])  Both Judge Isgur and Judge Bohm ruled, in *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643 (Bankr. S.D. Tex. 2007) (Isgur, J.) and *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289 (Bankr. S.D. Tex. 2007) (Bohm, J.), that the fees and costs at issue were governed by Rule 2016(a) because the plans at issue delayed vesting of the estate until discharge.  Thus, in that district, uniformly, a debtor's post-petition earnings are property of the estate until discharge.  That is not the case here.  Wells Fargo has illustrated the wide divergence of plan language regarding estate vesting across the country.  Even in the Eastern District of Texas, there are variances between plans as to when the estate terminates.  For example, each of the putative class sample members from the Eastern District had plans that vested the estate in the debtor at

---

[5]     Section 1327(b) of the Bankruptcy Code also makes it clear that such funds would be excepted from re-vesting in the debtor because the delivery was "otherwise provided in the plan or order confirming the plan...." 11 U.S.C. § 1327(b).

[6]     Wells Fargo asks the Court to take judicial notice of the form Chapter 13 Plan for the United States District and Bankruptcy Courts in the Southern District of Texas pursuant to Federal Rule of Evidence 201.

DEFENDANT'S POST-HEARING BRIEF
IN OPPOSITION TO CLASS CERTIFICATION                                                           8

confirmation, while Plaintiff's plan vested the estate at discharge.  (Doc. 195 at p. 19.)

Throughout the country there was considerable variation in judicial opinion with respect to when the estates were terminated in bankruptcy cases.  *See Barbosa v. Solomon*, 235 F.3d 31, 36 (1st Cir. 2000) ("the status of the property of the [bankruptcy] estate after the confirmation of a chapter 13 plan is a controversial issue in itself"); *In re: Rodriguez*, No. 09-20863-CIV, 2015 WL 9697324, at *4 (S.D. Fla. Dec. 9, 2015) ("courts are in disagreement as to the status of property [of the estate] before and after confirmation of a plan" (explaining three principal approaches)); *Woodard v. Taco Bueno Restaurants, Inc.*, No. CIV.A. 4:05-CV-804-Y, 2006 WL 3542693, at *8 (N.D. Tex. Dec. 8, 2006) (illustrating the unsettled nature of this issue, noting there is no Fifth Circuit precedent and proposing yet another approach).  Thus, even if Rule 2016(a) applied, there would still be considerable variability as to <u>when</u> the Rule was applied and, consequently, to what fees and costs on the putative class members' accounts.  For example, if a mortgage servicer sought to recover fees and costs post-confirmation in the Seventh, Ninth and Eleventh Circuits, Rule 2016(a) should not have applied because in those circuits no estate exists at all, or at most, only the income devoted to the plan constitutes the estate, after confirmation.  *See Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1339-40 (11th Cir. 2000); *Black v. United States Postal Svc. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997); *California Franchise Tax Board v. Jones (In re Jones)*, 420 B.R. 506, 514-17 (9th Cir. B.A.P. 2009).

The concern here is not which estate vesting approach this Court should adopt.  The concern, rather, is that there existed various and conflicting interpretations of when the estate ceased to exist during a bankruptcy proceeding among courts around the country between 2002 and December 1, 2011.  Plaintiff continues to fail to perceive that this case hinges on what Wells

Fargo's duty was in the putative class members' individual bankruptcy cases pending between 2002 and 2011. If its conduct was not wrong at the time, it cannot be wrong today.

The variability on this issue, as well as the issue of whether Rule 2016(a) applied at all to mortgage servicers, precludes certification. If the Court were to disregard the variability, it would improperly be substituting its judgment for that of bankruptcy courts around the country, including circuit courts, which have already decided the matter or which may have decided the matter differently in the context of the individual bankruptcy cases before them. In light of this variability, regardless of what the "right" answer is on these issues, there can be no commonality or typicality. *See AMC Entertainment, Inc.*, 549 F.3d at 773. Also, in the face of such variability, the Court cannot conclude, <u>as it must</u> to certify this class, that "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2557 (2011); *see Casa Orlando Apartments v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (requiring uniformity of injury); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273-74 (S.D. Fla. 2003) (noting the requirement of cohesiveness is essential in an injunctive class because unnamed members are bound by the action without the opportunity to opt out). Wells Fargo's failure to follow the alleged procedure set forth in Rule 2016(a) cannot be declared unlawful as to all of the class members. Many courts did not require mortgage lenders or servicers to comply with Rule 2016(a). Moreover, many courts did not consider the "estate" to exist post-confirmation rendering Rule 2016(a) a nullity at that point in time. The injunctive relief requested is not appropriate for all of the putative class members, which precludes this injunctive class action.

3.     <u>**The injunction requested by Plaintiff is broader than the certification order considered by the Fifth Circuit in *In re Rodriguez.***</u>

It is also important to emphasize that the injunction contemplated by Judge Isgur in the class certification order he entered in *In re Rodriguez*, and reviewed by the Fifth Circuit, was prospective and prohibitory only. Judge Isgur contemplated entering an injunction that would provide: "Countrywide shall not collect or attempt to collect any fees that (1) were incurred during the pendency of a class member's bankruptcy case, (2) are governed by Rule 2016(a), and (3) have not yet been authorized pursuant to Rule 2016(a)." (*See* Certification Order from *In re Rodriguez*, Case No. 08-01004, dated July 21, 2010, attached hereto as Exhibit A.)[7] The Certification Order containing this contemplated injunctive language was appealed to the Fifth Circuit and was affirmed. Here, Plaintiff seeks much broader mandatory injunctive relief requiring affirmative conduct on the part of Wells Fargo. Plaintiff includes borrowers who have already paid the fees and costs at issue in his class definition and with respect to those individuals, he asks the Court to direct Wells Fargo to reverse fees and costs collected long ago and reapply the funds to principal. This injunction would have the impermissible effect of addressing only past behavior, not future conduct. *See Bolin v. Sears Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000) (denying certification where the class members did not face further harm from the defendant). The effect would also be to forgive some amount of debt for each of the affected class members, which would have attendant issues regarding loan accounting and possible tax consequences. These consequences reveal that the injunction is nothing more than a disguised request for disgorgement, which is impermissible in this context and would cause the class to fail. *See In re Wilborn*, 609 F.3d at 756-577. Plaintiff's multiple representations that he

---

[7]     Wells Fargo asks the Court to take judicial notice of this court record pursuant to Federal Rule of Evidence 201.

is only seeking the relief that was affirmed in *In re Rodriguez* (*see* Reporter's Transcript of Class Certification Hearing on February 18, 2016 at 26:9-15) are false.[8]

### D.   THE RELIEF PLAINTIFF REQUESTS WOULD INTERFERE WITH OTHER COURTS' PLANS, ORDERS AND DISCHARGE INJUNCTIONS

The injunctive relief, if granted in this case, would also interfere with the putative class members' closed bankruptcy cases because this Court does not have the power to enforce the plans, orders and discharge injunctions of the bankruptcy courts in other jurisdictions around the country.

Plaintiff claims, without proof, that none of the plans, orders and injunctions issued by the bankruptcy judges in the putative class members' bankruptcy cases provided for the fees and costs assessed by Wells Fargo.[9]  Notwithstanding this absence of evidence, Plaintiff claims Wells Fargo's assessment and later attempts to collect the alleged undisclosed fees and costs violated the unknown terms of the plans, orders and discharge injunctions issued by the judges presiding over the putative class members' bankruptcy cases.  Plaintiff then asks this Court to remedy these presumed but unknown violations and enforce the terms of the bankruptcy courts' similarly unknown plans, orders and injunctions by 1) issuing its own prohibitory injunction to prevent Wells Fargo from ever collecting the fees and costs assessed, unless it re-opens the class

---

[8]   The bankruptcy court in *In re Rodriguez* expanded that injunctive language in the judgment ultimately entered in that case and in some particulars the language is similar to the injunction advanced by Plaintiff—except as to a Southern District of Texas class only.  That judgment was not appealed and it was not "approved" or affirmed by the Fifth Circuit.

[9]   This claim is flawed because it cannot be assumed that the fees and costs were not provided for.  Some orders, plans and discharge injunctions may have contained statements regarding fees and costs assessed by the mortgage servicer and some may have expressly allowed for such fees and costs.  This cannot be determined without reviewing all orders entered in each putative class member's case.  Counsel for Plaintiff even admitted, while testifying at the hearing on February 18, 2016, that reviewing all orders would be necessary to ensure the fees and costs at issue had not been agreed to, allowed, or otherwise treated by the bankruptcy court.  (Reporter's Transcript of Class Certification Hearing on February 18, 2016 at 100:3-102:18.)  This further demonstrates class certification is inappropriate.

DEFENDANT'S POST-HEARING BRIEF
IN OPPOSITION TO CLASS CERTIFICATION                                                      12

member's bankruptcy case and files a Rule 2016(a) application, and 2) with respect to those accounts for which Wells Fargo already collected and applied payments to the fees and costs, Plaintiff requests a mandatory injunction requiring Wells Fargo to affirmatively re-apply the payments to principal and interest owing on the putative class member's mortgage loan. Plaintiff argues the Court has the power to issue these injunctions as a contempt remedy pursuant to section 105(a) of the Bankruptcy Code.

Section 105(a) may bestow a court with equitable contempt power; however, it is well-settled that the court that issued an order or injunction <u>alone</u> possesses the power to enforce compliance with and punish contempt of the order or injunction. *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); *Suntex Dairy v. Bergland*, 591 F.2d 1063, 1068 (5th Cir. 1979) ("If [conduct] is found by the Missouri court to be in violation of its injunction, it may be in contempt of that court. The appropriate response to such contempt, if it exists, is a matter for the Missouri district court under that court's continuing jurisdiction to enforce or protect its injunction order."). This is true even in the context of a bankruptcy order or injunction. *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012) ("[A]lthough a federal court's injunction applies nationwide, '[v]iolation of an injunctive order is cognizable in the court which issued the injunction.'") (quoting *Waffenschmidt*, 763 F.2d at 716); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 917 (7th Cir. 2001) (finding same and affirming the dismissal of a nationwide class action asserting violations of discharge injunctions); *see Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509 (9th Cir. 2002) (holding that there is no private right of action to enforce the discharge injunction and explaining that Congress intended to leave "enforcement to the bankruptcy judge whose discharge order gave rise to the injunction"). The Fifth Circuit in *In re Wilborn* specifically cited *Waffenschmidt* in its warning that while Rule 23 can apply in a

bankruptcy context, this rule "may not extend a court's jurisdiction." 609 F.3d at 754. These binding opinions make it clear that a nationwide class action cannot be sustained in this context. *See also, e.g., Guetling v. Household Fin. Servs., Inc.*, 312 B.R. 699, 704 (M.D. Fla. 2004); *Beck v. Gold Key Lease, Inc. (In re Beck)*, 283 B.R 163, 166-174 (E.D. Pa. 2002); *Singleton v. Wells Fargo Bank, N.A. (In re Singleton)*, 284 B.R. 322, 324-325 (D. R.I. 2002); *Williams v. Sears, Roebuck and Co. (In re Williams)*, 244 B.R. 858, 867 (S.D. Ga. 2000).[10] This Court lacks the power to enforce by contempt or otherwise the plans, orders and discharge injunctions issued by bankruptcy courts in every other jurisdiction in the country. Certification of the national class requested here should be denied.

WHEREFORE, based on the foregoing, the other briefing in this case, the argument of counsel, the evidence before the Court and all other relevant matters, Wells Fargo respectfully requests that the Court deny Plaintiff's Motion for Class Certification, and strike the class allegations from Plaintiff's Amended Complaint. Wells Fargo also requests such other and further relief to which it may show itself entitled.

---

[10] Plaintiff places much emphasis and weight on *Slick v. Norwest Mortgage, Inc. (In re Slick)*, No. 98-14378-MAM, 2002 Bankr. LEXIS 772 (Bankr. S. D. Ala. May 10, 2002). Plaintiff claims this case serves as an example that a nationwide class is appropriate in this context. Plaintiff cannot dispute, however, that there was no final judgment to support this claim. Rather, the court was ultimately asked to approve a settlement, which it did. Plaintiff has also stressed that he is simply asking for the same relief requested in *In re Rodgriguez*. It is important again to point out that the class certified in *In re Rodgriguez* was limited to former debtors who had bankruptcy cases before bankruptcy courts in the Southern District of Texas.

DEFENDANT'S POST-HEARING BRIEF
IN OPPOSITION TO CLASS CERTIFICATION                                    14

Dated: March 2, 2016

Respectfully submitted,

*/s/ Thomas A. Connop*

Robert T. Mowrey
  Lead Attorney
  State Bar No. 14607500
Thomas A. Connop
  State Bar No. 04702500
Thomas G. Yoxall
  State Bar No. 00785304
Elizabeth K. Duffy
  State Bar No. 24050535
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
(214) 740-8000
(214) 740-8800 Facsimile

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's electronic service on this the 2nd day of March 2016 on the following counsel of record:

**James A. Holmes**
THE LAW OFFICE OF JAMES A. HOLMES, P.C.
202 South Marshall
Henderson, TX 75654

**Stephen C. Mahaffey**
MAHAFFEY & MAHAFFEY, P.C.
124 West Sabine Street
Carthage, TX 75631

**Karen L. Kellett**
ARMSTRONG, KELLETT & BARTHOLOW, PLLC
11300 N. Central Expwy., Suite. 301
Dallas, TX 75243

*Attorneys for Plaintiff*

*/s/ Thomas A. Connop*

Thomas A. Connop